Cleveland *v.* Citizens Gas Light Company.

## CLEVELAND and others *vs.* THE CITIZENS GAS LIGHT COMPANY.

1. Any business, however lawful in itself, which as to those residing in the neighborhood where it is carried on, causes annoyances that materially interfere with the ordinary physical comfort of human existence, is a nuisance that should be restrained.

2. Smoke, noise, and bad odors, even when not injurious to health, cause a discomfort against which the law will protect.

3. To warrant enjoining a trade as a nuisance, on the ground that it produces discomfort to those dwelling in the neighborhood, the discomfort must be physical, and not such as depends upon taste or imagination. Whatever is offensive physically, to the senses, and by such offensiveness makes life uncomfortable, is a nuisance.

4. It is usual and proper, where a building or works are being erected that can only be used for a purpose that is unlawful, to restrain the erection; but when it is not made to appear that the business for which the building is intended cannot possibly be carried on without becoming a nuisance, this court will deny the injunction, and leave the defendant at liberty to proceed with the erection of the building, at the risk of being restrained in the use of it, if a nuisance is ultimately created.

5. The danger of explosion is not adequate cause for enjoining the erection of a gas manufactory, where it is not made to appear that the danger is very great, or that the complainants buildings are sufficiently near to be seriously endangered by it, should it take place.

6. The fact that a neighborhood to be affected by the odors and offensive smell that will be caused by a business which the defendant is about to establish, and which complainant seeks to enjoin as a nuisance, already contains establishments devoted to noxious or disagreeable trades, is not enough to defeat the right to an injunction, unless such neighborhood has been by their continuance for years so wholly given up to such establishments that the addition of the one contemplated by the defendant will not add sensibly to the discomfort.

7. It appearing from the evidence, upon an application for an injunction to restrain the erection of gas works, that if the process of purifying by lime should be used in the works, it would cause an injury to the complainants, who were owners of dwellings and residents in the immediate neighborhood, by the generation of annoying and offensive vapors and odors, but that the defendants proposed to use other processes which might not so result, the court granted an injunction restraining the defendants from using the lime process, and from manufacturing gas in any way that would produce any annoyance to persons dwelling in the houses of the complainants, by any smoke, gases, or other effluvia or odors from the

works, but permitted them to erect their buildings and manufacture gas subject to a perpetual injunction, if discomfort should be occasioned thereby. Costs to abide the event of the suit.

This cause came up on the argument of a rule that the defendants show cause why an injunction should not issue to restrain them from erecting or carrying on their gas works at the place on which they had begun to erect them, or in the neighborhood of that place.

The argument was had upon the bill and answer of the gas company, and the affidavits attached to them, and upon depositions taken by both parties, under an order for that purpose.

*Mr. Abeel* and *Mr. Bradley*, for complainants.

Gas works are, *prima facie*, a nuisance. *Carhart* v. *Auburn Gas Light Co.*, 22 *Barb.* 312, 313.

A disagreeable, though not unhealthy smoke or smell, is a nuisance; insalubrity is not essential. *Rex* v. *White & Ward*, 1 *Burr.* 337; *Bamford* v. *Turnley*, 3 *Best & Smith* 81; *Sampson* v. *Smith*, 8 *Sim.* 272; *Walter* v. *Selfe*, 4 *DeG. & Sm.* 318; *Crump* v. *Lambert*, 3 *Eq. Cas.* (*E. L. R.*) 409; *Davidson* v. *Isham*, 1 *Stockt.* 189; *Wolcott* v. *Melick*, 3 *Stockt.* 207; *Holsman* v. *Bleaching Co.*, 1 *McCarter* 343.

The locality cannot be set up as an excuse for establishing a nuisance. It will not be left to a jury to say whether it is a convenient place. *Crump* v. *Lambert*, 3 *Eq. Cas.* (*E. L. R.*) 413; *Bamford* v. *Turnley*, 3 *Best & Smith* 65; *Tipping* v. *St. Helen's Smithing Co.*, 4 *Best & Smith* 608, 616, 1093.

Other nuisances cannot justify this one. *Attorney-General* v. *Colney Hatch Asylum*, 4 *Ch. Appeals* 146.

Any substantial annoyance will entitle a party to an injunction, notwithstanding great public benefits from the nuisance. Conveniences and inconveniences will not be balanced unless power is given to take and make compensation. *Broadbent*

v. *Imperial Gas Co.*, 3 *Jur.* (*N. S.*) 221 ; 2 *Jur.* 1132; *Attorney-General* v. *Cambridge Gas Co.*, 6 *Eq. Cas.* 282; 4 *Ch. Appeals* 71.

The fact that the neighborhood is one for residences of expensive character, and pleasant and desirable, is a fact that the court should regard. *Walker* v. *Brewster*, 5 *Eq. Cas.* 27, 34.

A trial at law is not necessary. In any case where a plaintiff could obtain substantial damages at law, he is entitled to an injunction from this court to restrain the nuisance. *Crump* v. *Lambert*, 3 *Eq. Cas.* 413. Lord Romilly: "I do not feel sufficient doubt about the case to grant an issue." *Ibid.* 414.

It is not the duty of the court, nor of the plaintiff, to inquire how the nuisance may be obviated; that is the defendant's own concern. He must be enjoined if a nuisance is proved. *Attorney-General* v. *Colney Hatch Asylum*, 4 *Ch. Appeals* 146.

*Mr. McCarter*, for defendants, cited

*Butler* v. *Rogers*, 1 *Stockt.* 487 ; *Rogers* v. *Danforth*, *Ibid.* 289; *Wolcott* v. *Melick*, 3 *Stockt.* 204; *Grafton* v. *Hilliard*, (in note to Bains *v.* Baker,) *Amb.* 158 ; *Att'y-Gen.* v. *Sheffield Gas Co.*, 19 *Eng. L. & Eq.* 640; *S. C.*, 3 *DeG., McN. & G.* 304 ; *Dubois* v. *Budlong*, 15 *Abbott, Pr. R.* 45.

THE CHANCELLOR.

The complainants in this case own, as tenants in common, four brick houses, occupied as dwellings, in Lombardy street, in the city of Newark. Some of these are occupied by the complainants themselves. They are designed, and suitable for dwellings for respectable and wealthy families, but are not the most costly or elegant in the city; yet are fully equal to the average of dwellings occupied by such families. The rest of Lombardy street, which extends from Front to Broad street, is built up with dwelling-houses of about the same class, which are inhabited by wealthy and respectable fami-

lies.   Lombardy street ends at Broad street, opposite one of the principle public parks of the city; · and Broad street there, and the other side of this park, has upon it some of the best and most costly residences in the city.   The houses of the complainants are about four hundred feet from Broad street, and were built more than twelve years ago. These houses are opposite the termination of Bridge street, on which are the lime and cement works, at a distance of about six hundred feet; and east of which, nearly opposite the complainant's houses, is a small triangular park, called Lafayette Park.   East of this park, and on the east side of Front street, is the Chadwick patent leather manufactory, separated from the park by front street.   From the east house of the complainants, to the nearest part of this manufactory, is about two hundred and fifty feet, and to the farthest part about six hundred feet.   Fulton street, which is on the south side of the block in which complainants' houses are, is built up with a good class of dwelling-houses occupied by families of respectability.

The Citizens Gas Light Company have commenced erecting their works on the east side of Front street, between it and the Passaic river, opposite the place where Lombardy street ends, in Front street.   The gas holder or tank will be about one hundred and eighty feet distant from the complainants' houses, and the retort house, purifier, and other works for the manufacture, will be between three hundred and four hundred and fifty feet distant.

The complainants allege that the building and working of the gas works so near their houses, will greatly injure their value, and render them unfit for residences.   That gas works always and necessarily send forth .noisome and unpleasant vapors and smoke which are diffused to an extent greater than the distance to these houses, which will render living in them uncomfortable and unhealthy.

The complainants further allege that gas in holders is liable to explode, and that the explosion of so large a quantity as will be contained in this holder, which it is admitted

will be ninety-five feet in diameter and forty feet high, will destroy the buildings within several hundred feet of it, and therefore it is a dangerous erection that should not be permitted in the thickly inhabited part of a city.

The defendants deny that the manufacture of gas in the manner in which they intend to conduct it, will be a nuisance to the complainants' houses, or will render life in them uncomfortable. They answer that they do not intend to use the process of purifying the gas with lime, which is the cause of the most objectionable odor arising from gas works, and will substitute for it the process by oxide of iron, which is comparatively inoffensive. They also intend to construct a cistern under ground, into which the tar and ammoniacal liquors and other offensive fluid products, will be conveyed by gas tight pipes, and from which they will be discharged by pipes into boats, which will convey them away.

The principles of law and equity that must govern this case were fully considered and determined by me, in the case of *Ross* v. *Butler*, 4 *C. E. Green* 294, and I have not found any reason to change the opinion then expressed.

Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance that should be restrained; and smoke, noise, and bad odors, even when not injurious to health, may render a dwelling so uncomfortable, as to drive from it any one not compelled by poverty to remain.

Unpleasant odors, from the very constitution of our nature, render us uncomfortable, and when continued or repeated, make life uncomfortable. To live comfortably is the the chief and most reasonable object of men in acquiring property as the means of attaining it; and any interference with our neighbor in the comfortable enjoyment of life, is a wrong which the law will redress. The only question is what amounts to that discomfort from which the law will protect.

The discomforts must be physical, not such as depend

upon taste or imagination. But whatever is offensive physically to the senses, and by such offensiveness makes life uncomfortable, is a nuisance; and it is not the less so, because there may be persons whose habits and occupations have brought them to endure the same annoyances without discomfort. Other persons or classes of persons whose senses have not been so hardened, and who, by their education and habits of life, retain the sensitiveness of their natural organization, are entitled to enjoy life in comfort as they are constituted. The law knows no distinction of classes, and will protect any citizen or classes of citizens, from wrongs and grievances that might perhaps be born by others, without suffering or much inconvenience. The complainants have houses built, and held for the purpose of residences, by families of means and respectability, and anything that by producing physical discomfort would render them unfit for such residence, or drive such families from them, is a nuisance which the law will restrain. This, then, is the question before me: whether the proposed works of the defendants would produce such annoyance as would render such families, composed of women and children, as well as men, uncomfortable; not whether men accustomed to follow their occupations in places where they are surrounded, and unavoidably, by much that is offensive, may not be so accustomed to odors of like nature as not to be annoyed by these.

The application is to restrain putting up the building, and also manufacturing gas. As to the building itself, it can be of no injury to any one, if no gas is ever made in it. But it is usual and proper where a building or works are being erected that can only be used for a purpose that is unlawful, to restrain the erection. The works, if erected, might tempt the owner to use them, and it seems like trifling to permit any one to go on with a building which he can never be permitted to use. But in this case, as will appear hereafter, I am not entirely satisfied that it is impossible to manufacture gas in some way that will not be a nuisance to houses situate as those of the complainants, and therefore I

do not feel justified in restraining the erection of the buildings, but will permit the defendants to use their own discretion in going on with them, if they choose to do so, after hearing the views entertained of the rights of the complainants and others in like situation.

As to the danger of explosion of the gas holder, I do not think sufficient is proved to show it to be a dangerous nuisance. In the first place, the danger of there being an explosion is small. The instances are rare, and it cannot happen from the ordinary use of the holder; and then the danger to any building at the distance of these of the complainants, does not appear. No proof is given of any injury to buildings at that distance; I do not think it as dangerous as the steam engines which are scattered every where through our cities.

I am satisfied, by the evidence, that if the process of purifying by lime should be used in the works of this company, it would cause a clear and serious injury to the complainants' houses, would make living in them uncomfortable. The evidence as to the process by the oxide of iron is not so clear the other way. The evidence clearly shows that it will not be so offensive as the lime process. And in the way that the defendants intend to revivify the oxide as detailed in the affidavit and deposition of Mr. Kennedy, who is devising and constructing their works, if it shall be strictly followed, it may not be so offensive as at all to annoy the complainants. There is no proof on their side to show that it will; this process is recently introduced in this country, and perhaps sufficient is not known of it to determine that question. But unless I am satisfied by proof, that the process intended to be used by the defendants will produce annoyance, I cannot restrain them.

With regard to the coal tar, the ammoniacal water and other liquid products of the manufacture of gas, the cistern and plan for conveying them to it, and emptying them from it, if it can be, and shall be faithfully carried out, may prevent the effluvia that usually arises from these sources. I

cannot say that it will not; at least I cannot, from any evidence in the case, or from any facts or principles of which I may be entitled to take cognizance. The plan seems to me not only ingenious, but sensible and plausible. Yet the subtle and penetrating nature of the effluvia that attends the manufacture of gas is so great, that I have doubt of the experiment until demonstrated by success.

With regard to the smoke and gases evolved upon the drawing of the retorts, I have more difficulty; this operation is repeated frequently every day, and is almost continual. The defendants will erect their retort-house below the hill, so that its top will be but a few feet above the level of the ground on which these houses stand. The smoke and gases are to be discharged by the ventilators near the top, usual in retort-houses. It seems to me that in certain states of the atmosphere, a gentle wind, in that direction, will carry this smoke and gas three hundred feet to these houses, and if so, it is clear that it will be an annoyance which ought not to be permitted; but on this point there is no evidence, and I ought not to restrain the defendants on speculations, however probable they may seem to me.

The justification that this is a neighborhood devoted to such manufacture, in which annoyances of this kind should not be restrained, is not sustained by the proof. Only two factories that could be an annoyance are shown; one the Patent Leather Manufactory, and the other the Cement Works. No neighborhood can be outlawed from protection by the existence of only two establishments of this kind. It is only when a town or part of a town is, by their continuance for years, wholly given up to such establishments, so that one more would not add sensibly to the discomfort, that this rule applies; as if in Sheffield, Birmingham, or Pittsburgh, or any other city, begrimmed and clouded with the soot and smoke issuing from hundreds of engines, one more was added, such almost imperceptible addition to the evil would not be restrained. Besides, the annoyance from the dust of the lime and cement is of a different nature and

much less injurious. And the only annoyance from the Patent Leather Works. shown to reach these houses, the smoke from the boiling varnish, was only occasional, and has for some years been decreasing. The complainants are clearly in a position to be protected in the enjoyment of their property against any nuisance of the kind complained of, if it really should exist.

But on the whole I am of opinion that no injunction against manufacturing gas ought to issue at the present stage of the case. The proof is not clear, except in case the gas shall be purified by lime, that the manufacture will seriously annoy any one at these houses. Some of the witnesses indeed express their opinion that it will, but with perhaps the exception of one or two, these opinions are not supported by facts observed by them. On the other hand, eleven witnesses, some of whom, at least, are known to be men of character and good sense, testify, that at like distances from the Newark gas works, in the course of years, they have not noticed any offensive smell, although lime purifiers were used; and although it seems to me that in this there must be some mistake or misapprehension, which perhaps an opportunity at cross-examination would have corrected, yet I cannot disregard this evidence unless overcome by evidence more explicit than that of the mass of the proof of the complainants. Besides, in this case, a preliminary injunction is not absolutely necessary; the cause can be brought to hearing before the works can be completed, or in operation, and full proof can be given, on both sides, of the effect of such works without lime purifiers, at the distance of the houses of the complainants. Upon the principles which I have adopted, I can have no hesitation on the final hearing in ordering a perpetual injunction, if it shall appear that works conducted as the defendants propose to conduct these, will annoy any one occupying the houses of the complainants, although only at intervals or occasionally, by any smoke, gas, or offensive vapors which may render living there uncomfortable; and there can be no doubt that the gases and

S *

odors which generally come from and surround gas works, if they come to a dwelling-house so as to be in any degree perceptible, render living in them uncomfortable. And I wish to be understood, that while I say that it is not shown to me to be impossible to manufacture gas at the distance proposed from the buildings of the complainants, without material annoyance, yet I much doubt if it will ever be done in practice; many things scientifically and theoretically possible are never accomplished in practice. The defendants have chosen to locate their works in the vicinity of one of the most populous parts of the city, a part for many years devoted to the residences of its most respectable citizens; they have done this for their own pecuniary advantage, contrary to the usual, if not universal, practice in locating gas works. If they are correct in their theory that it will be no nuisance at all, they are safe. But if after this, in face of the general protest against it, they go on to complete their works, they cannot expect the courts to take into consideration the total loss of their expenditure, if any annoyance to the comfort of the complainants or others similarly situated, should require the use of their works to be suppressed.

An injunction must issue to restrain the defendants, the gas company, from using what is known as the lime process in purifying their gas, or any process of which lime is a substantial part; and from manufacturing gas in any way that will produce any annoyance to persons dwelling in the houses of the complainants, by any smoke, gases, other effluvia or odors, that may issue from the works. The residue of the injunction is refused. The costs to abide the event of the suit.