MARGARET BOHAN, Respondent, *v.* THE PORT JERVIS GAS-LIGHT COMPANY, Appellant.

One carrying on a lawful business on his premises in such a manner as to prove a nuisance to his neighbor, is liable in damages.

It is not necessary to the right of action, that the neighbor be driven from his dwelling; it is enough that his enjoyment of life and property is rendered uncomfortable.

Although the acts complained of are inseparably connected with the carrying on of the business itself, and the resulting damages a necessary consequence, if those acts constitute a nuisance *per se*, it is not necessary to show negligence in order to sustain a recovery

Every person is bound to make a reasonable use of his property, having respect for his neighbor's right; a use which produces destructive vapors and noxious smells, resulting in material injury to the property and the comfort of those dwelling in the neighborhood, is not reasonable, and is a nuisance *per se*.

As a general rule, corporations authorized by statute to carry on a business, although it may be of a *quasi* public character, are under the same obligations to make a reasonable use of their property and to respect the rights of others as are citizens.

While the Legislature may authorize acts, which would otherwise be a nuisance, when they affect or relate to matters in which the public have an

interest or over which they have control, the statutory authority which affords immunity for such acts must be express, or a clear and unquestionable implication from powers expressly conferred, and it must appear that the legislature contemplated the doing of the very act which occasioned the injury.

Even in such case, while the legislative authorization exempts from liability to suits civil or criminal at the instance of the state, it does not affect the claim of a private citizen for damages for any special inconvenience or discomfort not experienced by the public at large.

Defendant was incorporated under the general statute of the state providing for the organization of gas-light companies (Chap. 37, Laws of 1848). For many years it manufactured gas and conducted its business without annoyance to anyone. In 1880 for the sake of economy, as alleged, it adopted a new process, and thereafter manufactured its gas from naphtha, which emitted disagreeable and offensive odors. In an action brought by plaintiff, an adjoining land owner, to recover damages for an alleged interference with the use and enjoyment of his property caused by said odors, and to restrain their further emission, there was no proof of a defective construction of defendant's works or of negligence in the operation and maintenance, and it appeared that the odors were inseparably connected with the manufacture of gas by the process used. The court charged the jury that the question for them to determine was: "Did the odor pollute the air so as to substantially render plaintiff's property unfit for comfortable enjoyment?" *Held* (Follett, Ch. J., and Haight, J., dissenting), no error; and, the jury having found for the plaintiff, that the act complained of constituted a nuisance *per se*. *Radcliff* v. *Mayor, etc.* (4 N. Y. 195); *Transportation Co.* v. *Chicago* (99 U. S. 635); *Bellinger* v. *N. Y. C. R. R. Co.* (23 N. Y. 42), distinguished. Reported below, 45 Hun, 257.

(Argued March 14, 1890; decided October 7, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 2, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict, and denied a motion for a new trial upon the minutes.

This action was brought to recover damages for the maintenance by defendant of an alleged nuisance upon its premises and to restrain its continuance.

The amended complaint, after setting out the incorporation of the defendant and that it was, and for several years prior to the commencement of the action had been, engaged in the manufacture of gas, and that the plaintiff and defendant were

owners of adjoining property, alleged "That about the year 1880, the defendant erected a new tank for the purpose of its gas-works on its said premises, the southern side of which stands within a few feet of plaintiff's premises. That about the year 1880, the defendant began, and ever since has and still does manufacture its gas at said works from naphtha, and that said tank was and still is used to store said naptha for the purposes aforesaid. That naphtha is an offensive, noxious, unhealthy and sickening mineral substance, destructive to the health and comfort of those required to be and remain in close proximity to it. That said tank was erected and is maintained in a negligent and unskillful manner and by reason of the negligence and want of care upon the part of the defendant in the construction, use of and maintenance of said tank * * * and also by reason of the erection and use of said tank and said works and the negligent and unskillful manufacture of gas from naphtha, the defendant has since 1880, and still does maintain a nuisance injurious to the comfort and enjoyment of the plaintiff, and injurious to the rental value of the said premises."

The defendant in its answer admitted the erection of the tank and that it was engaged in manufacturing gas from naphtha, and alleged that it used naphtha because it was more economical than coal, and denied negligence in the erection of its works or in the conduct of its business. It alleged that its business was carried on with all practicable care and skill, and by the use of the most improved machinery and the employment of skillful and competent persons. That it was engaged in a lawful business authorized by the statutes of the state, and that its gas was used in lighting the streets and public places of the village of Port Jervis, and that the consequences to the plaintiff therefrom were such as necessarily arose from the prosecution of its business.

It appeared on the trial that defendant had been engaged in manufacturing gas on the premises in question since 1860. Prior to 1880, it manufactured gas from coal, but since August of that year all its gas was manufactured from naphtha.

The plaintiff gave no evidence of negligence on the part of the defendant either in the construction or maintenance of its works or the conduct of its business.

For the failure to give such proof, the defendant moved to dismiss the complaint, which was denied and an exception was taken.

Further facts appear in the opinion.

*Lewis E. Carr* for appellant. There was error in the disposition of the case by the trial court in holding that the plaintiff could recover, under the pleadings, without proof of negligence either in the construction, operation, management or use of the defendant's works. (*Ostrander* v. *Conkey*, 20 Hun, 421; *E. M. Co.* v. *Campbell*, 13 Abb. Pr. 86, 92; *Sands* v. *Calkins*, 30 How. Pr. 1; *DeGraw* v. *Elmore*, 50 N. Y. 1, 5; *Ross* v. *Mather*, 51 id. 108, 110; *McMichael* v. *Kilmer*, 76 id. 36; *Barnes* v. *Quigley*, 59 id. 265, 268; *Bernhard* v. *Seligman*, 54 id. 661; *People* v. *Dennison*, 19 Hun, 137, 146; 80 N. Y. 656; 84 id. 272; *Tracy* v. *Ames*, 4 Lans. 500, 506; *Southwick* v. *N. Bank*, 84 N. Y. 420, 428, 429; *Walter* v. *Bennett*, 16 id. 250; *Moore* v. *Noble*, 53 Barb. 425.) Aside, however, from the question of the right to recover on the proof before the court under the complaint, is the far graver question of the right to recover at all for consequential injuries flowing from the prosecution of the defendant's business in the absence of proof of negligence. In holding that such recovery might be had the trial court fell into error. (Laws of 1848, chap. 37; 3 R. S. [8th ed.] 2075, 2080; Laws of 1859, chap. 311; 4 N. Y. 195; 23 id. 42; *Moyer* v. *R. R. Co.*, 88 id. 351, 356; *Wilson* v. *Mayor, etc.*, 1 Den. 595; *Selden* v. *C. Co.*, 29 N. Y. 634, 641; *Wood* v. *T. Co.*, 71 id. 81, 84; *Swett* v. *City of Troy*, 62 Barb. 630, 633; *Barnes* v. *S. S. R. R. Co.*, 2 Abb. [N. S.] 415, 418; *In re P. & T. R. R. Co.*, 6 Whart. 25, 36; *Grant* v. *Courter*, 24 Barb. 232; *Drake* v. *R. R. Co.*, 7 id. 508.) An act which the law authorizes, done with due care, cannot be a nuisance. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98, 107; *Davis* v.

*Mayor, etc.,* 14 id. 506, 524; *Kellinger* v. *R. R. Co.,* 50 id. 206, 210; *B., etc., G. L. Co.* v. *Richardson,* 63 Barb. 437, 449; *B., etc., G. L. Co.* v. *Calkins,* 62 N. Y. 386; *Beekman* v. *R. R. Co.,* 3 Paige, 45; 18 Wend. 9; *Todd* v. *Austin,* 34 Conn. 78; *Scudder* v. *T. D. F. Co.,* 1 Saxton's Ch. 694; *Munn* v. *Illinois,* 94 U. S. 113; *Talbot* v. *Hudson,* 16 Gray, 417; *N. O. G. Co.* v. *L. L. Co.,* 115 U. S. 650, 669; Laws of 1859, chap. 311, § 6; *People ex rel.* v. *M. G. L. Co.,* 45 Barb. 136, 137; *Shepard* v. *M. G. L. Co.,* 6 Wis. 539; 70 Am. Dec. 479, 481, 482, 483, 486, 487; *Williams* v. *G. Co.,* 52 Mich. 499; 50 Am. Rep. 266; *C. G. Co.* v. *Scott,* L. R. [10 Q. B. Div.] 400.

*John W. Lyon* for respondent. The plaintiff is entitled to have the use of her property unmolested by odors created by the manufacture of gas by the defendant, and for the creation and maintenance of such odors the defendant is liable for damages to the plaintiff. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Dunsbach* v. *Hollister,* 49 Hun, 352; *Filson* v. *Crawford,* 23 N. Y. S. R. 335; *Robinson* v. *Smith,* 25 id. 647; *Francis* v. *Shoillkopf,* 53 N. Y. 152; *Chapman* v. *City of Rochester,* 110 id. 273; *B. Church* v. *S. & T. R. R. Co.,* 5 Barb. 79; *Fish* v. *Dodge,* 4 Den. 311; *McKeon* v. *See,* 51 N. Y. 300; *DuBois* v. *Budlong,* 15 Abb. Pr. 446; *Catlin* v. *Valentine,* 9 Paige, 573; *Brady* v. *Weeks,* 3 Barb. 157; *Beir* v. *Cooke,* 22 Wkly. Dig. 121; *Carhart* v. *A. G. L. Co.,* 22 Barb. 297; *Campbell* v. *Seaman,* 63 N. Y. 568; *Mulligan* v. *Elias,* 12 Abb. [N. S.] 259; *M. G. Co.* v. *Barker,* 36 How. Pr. 233.) It is not necessary that the plaintiff should be driven from her dwelling. It is enough that the enjoyment of life and property be rendered uncomfortable. (*Fish* v. *Dodge,* 4 Den. 311; *Catlin* v. *Valentine,* 9 Wend. 575; *Carhart* v. *A. G. L. Co.,* 22 Barb. 297; *Mulligan* v. *Elias,* 12 Abb. [N. S.].259; *Dorr* v. *G. Co.,* 18 Hun, 274.) Relief will not be denied the plaintiff on the ground that the nuisance existed before plaintiff acquired the property or built her house, unless continued long enough to establish a prescriptive right. (*Mulligan* v. *Elias,* 12 Abb. [N. S.]

259; *Howard* v. *Lee*, 3 Sandf. 284; *Leonard* v. *Spencer*, 108
N. Y. 347.) The denial of defendant's motion to set aside the
verdict of the jury presents no error. (*Cogswell Case*, 103
N. Y. 10; *Dunsbach* v. *Hollister*, 49 Hun, 352; *Filson* v.
*Crawford*, 23 N. Y. S. R. 335; *Robinson* v. *Smith*, 25 id. 647.)

BROWN, J. The plaintiff made no complaint of the exist-
ence of a nuisance upon defendant's property prior to 1880,
when defendant first introduced the use of naphtha in the
manufacture of its gas, and it was a disputed question on the
trial, upon which there was a strong conflict of testimony,
whether the smells from the defendant's works, after it began
to use naphtha, were more offensive than when it used coal.

This question, it must be assumed, the jury determined in
favor of the plaintiff's contention.

The court charged the jury that, to constitute a nuisance, it
was essential that the smells and odors from the defendant's
works should be sufficient "to contaminate and pollute the
air and substantially interfere with the plaintiff's enjoyment
of her property," and that the question for them to determine
was: "Did the odor pollute the air so as to substantially
render plaintiff's property unfit for comfortable enjoyment."
An exception was taken by the defendant to this part of the
charge.

The rule stated by the learned judge was in accordance with
all the authorities. If one carry on a lawful trade or business
in such a manner as to prove a nuisance to his neighbor, he
must answer in damages, and it is not necessary to a right of
action that the owner should be driven from his dwelling; it is
enough that the enjoyment of life and property be rendered
uncomfortable. (*Rex* v. *White*, 1 Burr, 337; *S. H. S. Co.* v.
*Tipping*, 11 H. L. Cas. 642; *Fish* v. *Dodge*, 4 Denio, 311;
*Catlin* v. *Valentine*, 9 Paige, 575; *Campbell* v. *Seaman*, 63
N. Y. 568; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 id.
10; Wood on Nuis. § 497.)

It was claimed by the defendant, and the court refused a
request to charge, "that unless the jury should find that the

works of the defendant were .defective, or.that they were out of repair, or that the persons in charge of manufacturing gas at these works were unskillful and incapable, their verdict should be for the defendant;" and "that if the odors .which affect. the plaintiff are those that are inseparable from the manufacture of gas with the most approved apparatus and with the utmost skill and care, and do not result from any defects in the works, or from want of care in their management, the defendant is not liable." An exception to this ruling raises the principal question discussed in the case.

While every person has exclusive dominion over his own property and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neighbor's rights.

The maxim " *Sic utere tuo ut alienum non laedas* " limits his powers. He must make a reasonable use of .his property, and a reasonable use can never be construed to include those uses which produce destructive vapors and noxious smells, and that result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood.

The reports are filled with cases where this doctrine has been applied, and it may be confidently asserted that no authority can be produced, holding that negligence is essential to establish a cause of action for injuries of such a character. A reference to a few authorities will sustain this assertion.

In *Campbell* v. *Seaman* (*supra*) there was no allegation of negligence in the complaint, and there was an allegation of due care in the answer. · There was no finding of negligence, and this court affirmed a recovery.

In *Heeg* v. *Licht* (80 N. Y. 579), an action for injuries arising from the explosion of fire-works, the trial .court charged the jury that they must find for the defendant, " unless they found that ·the defendant carelessly and negligently kept the gunpowder on his premises." And he refused to charge upon the plaintiff's request " that the powder magazine was dangerous in itself to plaintiff, and was a private nuisance, 'and defendant was liable to the plaintiff, whether it was carelessly

kept or not." There was a verdict for the defendant, and this court reversed the judgment, holding that the charge was erroneous. In *Cogswell* v. *N. Y. & N. H. R. R. Co.* *(supra)*, the Special Term found, as facts, that in the construction of the engine-house and coal-bins, and in the use of its ·premises the defendant exercised due care, so far as the same was practicable, and it refused to find, upon .plaintiff's request, " that in the construction of the engine-house, chimney, smoke-pipe and coal-bins, it had not exercised, and does not now exercise, such reasonable and proper care as was necessary not to injure the plaintiff's property." A judgment for the defendant was reversed, this court holding that the engine-house as used was a nuisance, and that it was not an answer to the action that the defendant exercised all practicable care in its management. In *Pottstown Gas Co.* v. *Murphy* (39 Penn. St. 257),· the charge of the court, and the refusals to charge, were very similar to the charge in this case. The Supreme Court of Pennsylvania overruled the exceptions, holding that negligence was not essential to a right of recovery. To the same effect see *Cleveland* v. *C. G. L. Co.* (20 N. J. Eq. 201); *O. G. L. & C. Co.* v. *Thompson* (39 Ill. 598) ; Wood on Nuis. (2d ed.) § 553.

The principle, that one cannot recover for injuries sustained from lawful acts done on one's own property without negligence and without malice, is well founded in the law. Every one has the right to the reasonable enjoyment of his own property, and so long as the use to which he devotes it violates no rights of others, there is no legal cause of action against him.

The wants of mankind demand that property be put to many and various uses and employments, and one may have, upon his property, any kind of lawful business, and so long as it is not a nuisance, and is not managed so as to become such, he is not responsible for any damage that his neighbor accidently and unavoidably sustains. Such losses the law regards as *damnum absque injuria.* And under this principle, if the steam boiler on the defendant's property, or the gas retort, or the naphtha tanks had exploded and injured the plaintiff's property, it would have been necessary for her to

prove negligence, on the defendant's part, to entitle her to recover. (*Losee* v. *Buchannan*, 51 N. Y. 476.)

But where the damage is the necessary consequence of just what the defendant is doing, or is incident to the business itself, or the manner in which it is conducted, the law of negligence has no application and the law of nuisance applies. (*Hay* v. *Cohoes Co.*, 2 N. Y. 159; *McKeon* v. *See*, 51 id. 300.)

The exception to the refusal to charge the first proposition above quoted was not, therefore, well taken.

It is contended, however, by the defendant, that the acts of the legislature relating to gas companies are a protection from liability for consequential injuries flowing from the manufacture of gas, or the prosecution of the business, when want of care forms no element of the cause of injury, and it is sought to apply to this case the broad principle that that which the law authorizes cannot be a nuisance, although it may occasion damages to individual rights and property.

The cases cited to sustain this proposition are ones where municipal corporations were engaged in grading and improving public streets and highways. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Transportation Co.* v. *Chicago*, 99 U. S. 635.) Or where the act causing the injury was done by corporations in the construction of works upon property acquired under the power of eminent domain. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42.)

In these cases, in doing the acts complained of, the defendants acted in the performance of a public duty imposed upon them by the legislature, or in the exercise of a right conferred by law, and it is well settled that persons appointed or authorized by law to perform a public duty, or to do acts of a public character are not answerable for consequential damages if they act within their jurisdiction and with care and skill. (*Trans. Co.* v. *Chicago, supra; Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 id. 105; Cooley on Const. Lim. [5th ed.] 671.

This principle cannot, however, be applied to cases like the one under consideration.

The defendant is incorporated under chapter 37, Laws of 1848, which authorizes in general terms the creation of corporations for manufacturing and supplying illuminating gas. It acquired by that act its corporate life and character, and the power to purchase and hold such real and personal property as might be necessary to enable it to carry on its business.

By section 18 of the act named, it is given the power to lay its conductors through the streets of the city, village or town in which it is located, with the consent of the municipal authorities of such city, etc., and by chapter 311 of the Laws of 1859, it is required to furnish gas to any applicant within 100 feet of its mains.

It may be conceded that the business of manufacturing and distributing gas through the public streets for public and private use is a business of a public character, and the individual possessing such right has a franchise granted by the state for a public object, and that it meets a public necessity for which the state may make provision.

But the state has not seen fit to confer upon the corporations formed under the act cited, the power of eminent domain, and they cannot, therefore, locate their works where they will.

In their ability to acquire real estate upon which to establish their manufactury, they have no greater power than any citizen of the state, and having acquired property they rest under the same obligation as other citizens, to make a reasonable use of it and to respect and regard the rights of their neighbors.

The proposition contended for by the learned counsel for the defendant has, in recent years, received full consideration in the courts of England and of this country, and the rule is now established that the statutory authority which will justify an injury to private property and afford immunity for acts which would otherwise be a nuisance must be express, or must be a clear and unquestionable implication from powers expressly conferred, and it must appear that the legislature contemplated the doing of the very act which occasioned the injury. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *B. & P. R. R. Co.* v. *Fifth Bap. Ch.*, 108 U. S. 317;

*Hill* v. *Managers of Met. Asylum Dist.*, L. R. [4 Q. B.] 433;
L. R. [6 App. Cas.] 193; *Pottstown Gas Co.* v. *Murphy*, 39
Penn. St. 257; *Eames* v. *N. E. W. Co.*, 11 Metc. 570; *Commonwealth* v. *Kidder*, 107 Mass. 188.)

In *Pottstown Gas Co.* v. *Murphy*, the Supreme Court of
Pennsylvania said : " The principle invoked applies only when
an incorporation clothed with a portion of the state's right of
eminent domain takes private property for public use on making proper compensation, and when such damages are not a
part of the compensation required."

In *Eames* v. *N. E. Worsted Co.*, Chief Justice SHAW said :
" The Mill Act affords no warrant or justification for erecting
or maintaining a nuisance."

In *Commonwealth* v. *Kidder*, in considering the effect of a
statute authorizing the storing and manufacturing of naphtha
and petroleum, the Supreme Court of Massachusetts said :
" The reasonable, if not necessary, inference is that it was not
the intention of the legislature to establish a new rule in this
regard, but to leave the question whether the manufacturing
is carried on at such places and in such a manner as to be
unwholesome and offensive to the public, and on that account
indictable as a nuisance, to be determined by the rules of the
common law."

In *B. & P. R. R. Co.* v. *Fifth Bap. Ch.*, it was said : " The
authority of the company to construct such works as it might
deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them where
it may think proper without reference to the property and
rights of others.   Grants of privileges or power to corporate
bodies like those in question confer no license to use them in
disregard of the private rights of others, and with immunity
for their invasion."

And in *Hill* v. *Managers of Met. Asylum Dist.*, Lord
WATSON said : " When the terms of the statute are not
imperative, but permissive, when it is left to the discretion
of the persons empowered to determine whether the general
powers committed to them shall be put in execution or not, I

think the fair inference is that the legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected."

There is nothing in *Truman* v. *L. B. & S. C. R. Co.*, L. R. [25 Ch. Div.] 45) conflicting with this rule.

The House of Lords in that case recognized fully the rule applied in *Hill* v. *Managers of Met. Asylum Dist.*, and held that the purpose for which the land was acquired by the defendants being expressly authorized by the act of parliament, and being incidental and necessary to the authorized use of the railway for cattle traffic, the company were authorized, to do what they did.

The legislature may authorize acts which would otherwise be a nuisance when they affect or relate to matters in which the public have an interest, or over which the public have control, such as highways or public streams.

In such cases the legislative authorization exempts from liability to suits civil or criminal at the instance of the state, but it does not affect the claims of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large. (*Crittenden* v. *Wilson*, 5 Cow. 165 ; *Brown* v. *C. & S. R. R. Co.*, 12 N. Y. 486 ; *Sinnickson* v. *Johnsons*, 17 N. J. L. 151 ; *B. & P. R. R. Co.* v. *Bap. Church, supra.*)

These views lead to the conclusion that the defendant obtained no immunity from liability for consequential injuries sustained by property surrounding its works by reason of its incorporation, or the privilege conferred upon the business by the acts of the legislature, and that the facts of the case do not take it out of the operation of the rules of law applicable to ordinary common-law nuisances.

The legislature has given to the corporations created to manufacture gas the right to lay down their conductors in the public streets subject to the control and regulation of the municipal authorities, and for acts done in the execution of that privilege they are exempt from prosecution at the suit of the people.

The choice, however, of the place to locate their works, and the selection of materials from which to manufacture gas, has been left to the corporations, and those things must be performed with reference to the rights of others.

The fact appears in this case that for twenty years the defendant conducted its business without annoyance to anyone. For the sake of economy (so it alleges) it adopted, in 1880, a new process and new materials from which to make its gas. The result, under the finding of the jury, has been to impair the value of the plaintiff's property and substantially interfere with its comfortable enjoyment. If the defendant's contention should prevail, there would be no restraint upon the location of the business, and no limit to the offensive character of the materials it might use. It would thus have an immunity which the law denies to every other citizen.

We think the proof permitted the conclusion that the defendant had created a nuisance, and that there was no error in the charge of the court, or the refusal to charge.

The judgment must be affirmed.

HAIGHT, J. (dissenting). This action was brought to recover damages alleged to have been sustained by the plaintiff in consequence of offensive odors proceeding from the gas-works of the defendant, and to obtain an injunction restraining the defendant from permitting further emissions of such odors.

The complaint alleges negligent and unskillful construction of the works, and also negligence in the use and maintainance thereof.

The trial resulted in a verdict for damages, upon which the court awarded a judgment for an injunction.

Upon the trial it appeared that the defendant was incorporated under chapter 37 of the Laws of 1848 for the purpose of manufacturing and supplying the streets, public places and inhabitants of the village of Port Jervis with illuminating gas; that its works were constructed in the year 1860 upon lands purchased for that purpose, since which time it has continued the manufacture of gas; that prior to 1880 coal was used in

such manufacture, but since that time naphtha has been used instead; that in making the change from coal to naphtha two storage tanks were constructed, one of which was constructed near to the plaintiff's premises. It further appeared that the plaintiff lived upon the premises adjoining those of the defendant and that she had been the owner thereof since the year 1878. It further appeared that in all works with the most approved apparatus and managed with the utmost skill and care there was some odor which was inseparable from the manufacture of gas.

It was claimed upon her part that prior to 1880 there was a smell of gas coming from the works of the defendant, but not near as strong as since the change to naphtha; that since that time the air has been impure and that there has been a disagreeable smell at all times; that at certain times it is greater than at others, causing a nauseous disagreeable feeling, obliging her to close the windows of her house to keep out the smells. Whilst on the part of the defendant it was claimed that the odor proceeding from the works was not near as strong since the change from coal to naphtha; that the works were constructed in the best possible manner, according to plans of the most approved character and were managed in the highest degree of care and skill.

In submitting the case to the jury the defendant's counsel asked the court to charge "that unless the jury find that the works of the defendant were defective or that they were out of repair, or that the persons in charge of manufacturing gas at the works were unskillful and incapable, their verdict should be for the defendant;" also, "that if the odors which affected the plaintiff were those that were inseparable from the manufacture of gas with the most approved apparatus and with the utmost skill and care and do not result from any defect in the works, or from want of care in their management, the defendant is not liable in this action;" and also, "that if the jury find that the plaintiff became the owner of the premises described in the complaint after the erection of the defendant's works, and after it was engaged in the manufacture of gas

therein, she took them subject to such odors as were insepar-
able from the manufacture of gas conducted in the most care-
ful and skillful manner and with the most approved machinery
for that purpose." These requests were severally refused,
and an exception taken, and the court charged the jury that
"if this defendant's works gave out foul odors or noxious
vapors to an extent sufficient to contaminate or pollute the air
and substantially to interfere with the plaintiff's enjoyment of
her property, then that would be a nuisance as against her and
this plaintiff would be entitled to recover," to which charge the
defendant excepted.

The question is thus presented as to whether the works of
the defendant are, in the absence of negligence either in their
construction or operation, a nuisance *per se*, for if the odors
emanating therefrom are inseparable from the manufacture of
gas with the most approved apparatus and with the utmost
skill and care, and do not result from any defects in their
management, it follows that all works for the manufacture of
gas are nuisances as to those living near enough to the plant to
be affected by the odor, even though they located there subse-
quent to the works. The question is one of importance. It
is not free from difficulty, and the authorities treating upon
the subject are not in entire harmony.

A nuisance, as it is ordinarily understood, is that which is
offensive and annoys and disturbs. A common or public
nuisance is that which affects the people and is a violation of
a public right either by direct encroachment upon public
property or by doing some act which tends to a common injury
or by the omitting of that which the common good requires, and
which it is the duty of a person to do. Public nuisances are
founded upon wrongs that arise from the unreasonable, unwar-
rantable or unlawful use of property, or from improper, inde-
cent or unlawful conduct working an obstruction or injury to the
public and producing material annoyance, inconvenience and dis-
comfort. Founded upon a wrong it is indictable and punishable
as for a misdemeanor. It is the duty of individuals to observe
the rights of the public and to refrain from the doing of that

which materially injures and annoys or inconveniences the people, and this extends even to business which would otherwise be lawful, for the public health, safety, convenience, comfort or morals, is of paramount importance, and that which affects or impairs it must give way for the general good. In such cases the question of negligence is not involved, for its injurious effect upon the public makes it a wrong which it is the duty of the courts to punish rather than to protect. But a private nuisance rests upon a different principle. It is not necessarily founded upon a wrong, and consequently cannot be indicted and punished as for an offense. It is founded upon injuries that result from the violation of private rights and produce damages to but one or few persons. Injury and damage are essential elements, and yet they may both exist and still the act or thing producing them not be a nuisance. Every person has a right to the reasonable enjoyment of his own property, and so long as the use to which he devotes it violates no rights of another however much damage others may sustain therefrom, his use is lawful and it is *damnum absque injuria.* (*Thurston* v. *Hancock*, 12 Mass. 222.)

So that a person may suffer inconvenience and be annoyed and if the act or thing is lawful and no rights are violated it is not such a nuisance as the law will afford a redress; but if his rights are violated, as for instance if a trespass has been committed upon his land by the construction of the eaves of a house so that the water will drip thereon, or by the construction of a ditch or sewer so that the water will flow over and upon his premises, or if a brick kiln be burned so near his premises as that the noxious gases generated therefrom are borne upon his premises killing and destroying his trees and vegetation, it will be a nuisance for which he may be awarded damages. (*Campbell* v. *Seaman*, 63 N. Y. 568.)

Hence it follows that in some instances a party who devotes his premises to a use that is strictly lawful in itself may, even though his intentions are laudable and motives good, violate the rights of those adjoining him, causing them injury and damage and thus become liable as for a nuisance. It, there-

fore, becomes important that the courts should proceed with caution and carefully consider the rights of the parties and not declare a lawful business a nuisance except in cases where rights have been invaded resulting in material injury and damage. People living in cities and large towns must submit to some inconvenience, annoyance and discomforts. They must yield some of their rights to the necessity of business, which, from the nature of things, must be carried on in populous cities. Many things have to be tolerated that under other circumstances would be abated, the necessity for their existence outweighing the ill results that proceed therefrom. Therefore, as to business which is lawful and reasonable and is not of itself a nuisance when properly conducted, which is carried on upon ones own premises, invading no right of a neighbor, is not such a nuisance as the law will afford redress, even though it produces an inconvenience and annoyance, unless such inconvenience and annoyance is the result of negligence and carelessness; but where the business is of that character as to become a common nuisance the damages may be recovered even though no negligence is shown. (*Rockwood* v. *Wilson*, 11 Cushing, 221–226.)

The distinction between the two cases is that in the former the business is not of that nature as to injuriously affect others, but may become so by the negligent manner in which it is carried on; whilst in the latter case the nature of the business is such as must necessarily be injurious, even though managed with the greatest care and skill. (Wood's Law of Nuisances [2d ed.], § 127.)

Again, there is another class of cases in which the question of negligence is material, as, for instance, where the legislature has authorized the doing of that which would otherwise be a nuisance. In such cases the person is shielded from liability for damages that ensue, unless he is chargeable with negligence for the manner in which the act was done. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42; *Kellinger* v. *F. S. S. & G. S. F. R. R. Co.*, 50 id. 206–212; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id.

98–107; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 id. 107; *Ottenot* v. *N. Y., L. & W. R. Co.*, 28 N. Y. S. R. 483.)

As, for instance, a person may be annoyed and inconvenienced by the noise and tread of passing railroad trains, and yet where the railroad is lawfully built and is managed with proper care and skill, it is not a nuisance, even though it passes near to a dwelling-house and materially disturbs the quiet and slumber of the occupants. (*Beseman* v. *P. R. R. Co.*, 50 N. J. L. 235.)

But the authority of the legislature should doubtless be express (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10) and relate to matters of public utility in which the people have an interest and the right of control. (*B & P. R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317–332.)

We are thus brought back to the question as to whether the business of manufacturing gas by the defendant is in and of itself a nuisance. As we have seen, the defendant was incorporated under the general laws of the state for the purpose of manufacturing illuminating gas, and under the provisions of chapter 311 of the Laws of 1859, section 6, it is required to furnish gas for lighting purposes to any applicant within 100 feet of any main laid by it for the distributing of gas. It is subject to legislative control and its meters to the inspection and test of the public inspector appointed by the governor for that purpose. The legislature may give it the power to exercise the right of eminent domain, and the discharge of its duty to individuals, and the public may be compelled by mandamus. (*People ex rel. Kennedy* v. *M. G. L. Co.*, 45 Barb. 136; *Williams* v. *M. G. Co.*, 52 Mich. 499; *In re B. & R. N. G. Co.* v. *Richardson*, 63 Barb. 437.)

It is, therefore, a business of a public nature and utility, for which the state can control and make provision. Justice HARLAN, in delivering the opinion in the case of *New Orleans Gas Co.* v. *Louisiana Light Co.* (115 U. S. 650–669), says: " The manufacture of gas and its distribution for public and private use by means of pipes laid, under legislative authority, in the streets and ways of a city, is not an ordinary

business in which everyone may engage, but is a franchise belonging to the government, to be granted for the accomplishment of public objects to whomsoever and upon what terms it pleases. It is a business of a public nature and meets a public necessity for which the state may make provision. It is one which so far from affecting the public injuriously as to become one of the most important agencies of civilization for the promotion of the public convenience and public safety."

It is undoubtedly true that in the manufacture of gas the escape of some is unavoidable, and it may inconvenience those who live in the immediate vicinity of the works, but the necessities of the people living in large cities and villages imposes some inconvenience to others and has compelled recognition of the principle that each member of society must submit to annoyances consequent upon the use of property, provided such use is reasonable as respects the owner and those immediately affected in view of time, place and other circumstances. (*St. Helens Smelting Co.* v. *Tipping*, 11 H. L. Cas. 642–646 ; Cooley on Torts, 598–601.)

We are aware that a different view has been expressed in reference to gas-works. *Carhart* v. *A. G. L. Co.*, 22 Barb. 297–312.)

But, notwithstanding this, our conclusions are that, in view of the circumstances, the public character and utility, the business is lawful, authorized by the legislature and that it is not a nuisance if properly conducted. It may, however, be carried on in such a manner as to unnecessarily affect and injure others, in which case it would become a nuisance. If we are correct in this view the question of negligence was involved in the case and should have been submitted to the jury. As we have seen, time, place and circumstances have an important bearing upon the question. A person may negligently select an improper place for the establishment of his business. That which would be proper and tolerated in one locality would not be in another. Negligence may also exist in the construction as well as in the management and operation. Each person should conduct his business with the best

approved apparatus, with such skill and care as experienced and prudent persons may possess, in order that he may do his neighbor as little harm as possible. (*People* v. *Sands,* 1 Johns. 78–88.)

We do not understand it to be claimed that the defendant was guilty of maintaining a public nuisance, or that it is chargeable with any fault or negligence in the selection of the locality in which it erected its works. It is claimed that they were constructed of the best material according to the best known plan and operated with the highest degree of skill and care. For twenty years they were operated without complaint. The plaintiff subsequent to the location of the defendant purchased the adjoining property and took up her residence thereon. It is true that she claimed to be affected from the odors that came from the naphtha tank constructed near her premises and that that was constructed after she became a resident there. It is possible that the defendant negligently located its tank in an improper place, but that question was not submitted to the jury. Neither was the question as to whether the odors proceeding from this tank produced the nuisance. The question submitted was as to whether the odors proceeding from the entire gas-works constituted a nuisance. It was also true that there was some evidence tending to show that the plaintiff's health had been affected. She testified that on some occasions she had been affected with nausea, but the question as to whether the works affected the health of the public or of the plaintiff was not submitted. On the contrary, it was expressly taken from the jury by the instruction to which the exception was taken, in which the court stated that it would be a nuisance "whether it affected the health of the plaintiff and her family or not."

Thus far we have proceeded upon the theory that the business was lawful, proper and reasonable, and was not a nuisance if properly managed and conducted, and that consequently the question of negligence was involved. But we are also inclined to the view that the business is authorized by the legislature, and is for that reason protected, unless negligence

may be shown. As we have seen, the business is of public nature and utility, subject to the control of the legislature, and all individuals living upon the lines of its pipes may demand and enforce service therefrom. It was authorized to acquire land by purchase on which to erect its works. It is true the legislature has not expressly designated any particular lot or parcel of land upon which its works should be erected. The selection of the place was left to the company, and in making its selection, it was doubtless bound to take into consideration the nature of the business and the surrounding locality and so locate as to produce as little harm to others as possible. As we have seen, no complaint has been made in reference to the selection of the locality that was made by the defendant in 1860. The authority to manufacture and supply gas for lighting the streets, public and private buildings of the village of Port Jervis, is express, and if it is conducted in a proper place, with the most approved apparatus, with the utmost skill and care, and without the escape of odors that are not inseparable from such manufacture, there can be no liability for consequential injury to others.

The learned General Term was of the opinion that the case of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (*supra*), held adversely to this view, but we do not so understand that case. The New York and New Haven railroad company had purchased a lot adjacent to the plaintiff's dwelling and had erected thereon an engine-house and coal-bins for the use of its roads. The engine-house was designed to accommodate eleven locomotives and had eleven smoke-stacks extending above the roof to about the height of the third-story window of plaintiff's house. The coal-bins were unprovided with covers to prevent the dust from the coal stored therein from passing into and upon the plaintiff's dwelling. The smoke, gases, soot, and cinders from the smoke-stacks and the dust from the coal-bins when loading and unloading the coal produced the damage complained of. The facts found clearly established negligence. The court it is true, held that in that case the defendant was not protected by any authority that it

had from the legislature, there being no express authority for the selection of the lot on which this engine-house was constructed and that the selection made was an improper one. Our views are fully in accord with the principles decided in that case.

In the case of *Heeg* v. *Licht* (80 N. Y. 579), the defendant had constructed upon his premises a powder magazine in which he kept stored a quantity of powder which, without apparent cause, exploded, damaging the plaintiff's building. It was held that the plaintiff could recover without showing carelessness or negligence. Miller, J., in delivering the opinion of the court, says: "The fact that the magazine was liable to such a contingency, which could not be guarded against or averted by the greatest degree of care and vigilance evinces its dangerous character, and might in some localities render it a private nuisance. In such a case the rule which exonerates a party engaged in a lawful business when free from negligence has no application." The rule we have contended for is thus recognized and conceded. There is a distinction between an action for a nuisance in respect to an act producing a material injury to property and one in respect to an act producing personal discomfort. This difference is clearly pointed out in the case of *St. Helens Smelting Co.* v. *Tipping* (*supra*).

We have already shown that any business which endangers the safety or health of others is a common nuisance and must give way for the public good, and that in such cases negligence was not involved. The keeping of gunpowder may not constitute a nuisance *per se;* that depends upon the locality and quantity. A thimbleful might not be dangerous, whilst fifty barrels full might be. It thus becomes a question of fact as to whether it is dangerous, and if it is found to be then it is a nuisance *per se*. The court very properly distinguished this case from those in which the business engaged in is lawful and not dangerous, which, in and of itself, is not a nuisance when properly conducted, but may become such by the negligent manner in which it is carried on.

The claim that the defendant, in order to be brought within the protection of the statute, must have the right of eminent

domain and acquire the land upon which its works are constructed by proceedings to condemn is not sustained by any well considered case. What difference can it make whether the land is acquired by voluntary purchase or by proceedings to condemn? It is the business which is expressly authorized by the statute, and in order to carry it on the right to acquire land on which to conduct it is given. As we have already shown, no claim has been made that the defendant's works were improperly located, and it is, consequently, not apparent how the question of location can deprive it of the protection of the statute. It is true that a railroad corporation is given the right of eminent domain, and may acquire lands for the purposes of its incorporation by proceedings to condemn, but in order to institute such proceedings it must be shown that they are unable to agree upon the purchase thereof. If they can agree then the proceedings cannot be instituted. Can it be that such a company would be liable for the maintaining of a nuisance by reason of the noise, jar and smoke of its passing trains, because it has acquired the right of way by voluntary purchase instead of by proceedings to condemn? We think not. The answer would be that it makes no difference how the company acquired the title to the land upon which it was operating its road.

The defendant's business is of a public nature and utility. If it is a nuisance *per se*, and without the protection of the statute, an individual may procure it to be enjoined and thus drive it from place to place whilst another individual, living upon the line of its mains, may compel the company, by mandamus, to proceed with its business and supply his residence with illuminating gas, thus producing a condition in which the company would be liable if it did, and would also be liable if it did not.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur with Brown, J., except Follett, Ch. J., and Haight, J., dissenting.

Judgment affirmed.