(36 App. Div. 1.)

ROSENHEIMER v. STANDARD GASLIGHT CO.

(Supreme Court, Appellate Division, First Department. December 30, 1898.)

1. NUISANCE—EXERCISE OF CARE—LIABILITY.
    The ineffectual exercise of care to prevent or reduce the effect of a nuisance does not affect defendant's liability therefor.
2. SAME—GAS COMPANY—CHARTER RIGHTS.
    That a corporation is authorized by charter to manufacture gas does not authorize it to commit a nuisance in its manufacture, though such business cannot be otherwise conducted.
3. REVIEW—CHARGE—MISLEADING STATEMENT.
    Where a statement in a charge is not misleading when read with its context, it is not erroneous because misleading when read alone.
4. PRIVATE NUISANCE—MEASURE OF DAMAGES.
    The measure of damages to neighboring property from a private nuisance is the diminution in its rental value.
5. SAME.
    Injury to the health of a person resulting from a private nuisance located near his residence is a proper element of damage.
6. REVIEW—SPECIAL VERDICT—DISCRETION.
    The requirement of a special verdict is a matter within the discretion of the trial judge, and his refusal to require it will not be reviewed, unless it appears that his discretion was abused.

Appeal from trial term, New York county.

Action by Louisa Rosenheimer against the Standard Gaslight Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Henry Thompson, for appellant.
E. W. Tyler, for respondent.

PATTERSON, J.    It is sought in this action to recover damages for injuries resulting from the maintenance of a nuisance on the defendant's property.    On the trial, the plaintiff had a verdict, from the judgment entered upon which, and from an order denying a motion for a new trial, the defendant appeals.    The important question presented is that of the defendant's liability,—the plaintiff's contention in that regard being that the use, or manner of use, of the defendant's property, constitutes a private nuisance; while the defendant insists that such use is authorized by law, does not exceed what is required by the necessities of the business in which it is lawfully engaged, and that consequential injuries to the plaintiff are only such inconveniences as one must suffer or sustain to personal or property rights by the lawful use by another of his own property.

The plaintiff is the owner of a parcel of land situate on the northerly side of 116th street, near Avenue A, in the city of New York. On her land was a dwelling house, in which she and her family resided for some years prior to December, 1893, and there was also erected on such land a small building used as an office by the plaintiff's husband in the conduct of his business.    The defendant is a corporation duly organized in February, 1886, under a statute of the state of New York, to carry on the business of manufacturing illuminating gas and distributing it to customers.    It erected upon its premises, which are directly opposite those of the plaintiff, a large and costly plant, and from and after the completion of its works, in or about the year 1887, it has manufactured gas from naphtha.    In the processes of manufacture, and in other details of the conduct of its business, certain consequences ensue which are claimed by the plaintiff to constitute the alleged nuisance.    They are, according to the plaintiff's representation, the emission of fumes destructive to the health and comfort of those required to be and remain in proximity to the defendant's works, and the generation and emission of heavy smoke, having a disagreeable and unwholesome smell, which, wafted by the wind, causes a deposit of black and sticky substances upon clothes and other articles outside of her house, and upon the furniture and other articles in the house.    It is also asserted that in blowing up the fires on the defendant's premises, and in the chimneys of the defendant's factories, loud, penetrating, and disagreeable noises and vibrations occur, especially noticeable at night, disturbing sleep, and which impaired the health of the plaintiff; and, generally, that from the time the defendant's works were first erected and put in operation, and continuously since then, great annoyance, discomfort, and ill health have been caused by offensive, noxious, unhealthy, and sickening odors of the naphtha, and of the fumes generated by the processes of the manufacture of the naphtha into gas and by other processes of the defendant, and that injury to the plaintiff's health and damage to her property have ensued, and she has not been able to enjoy such

55 N.Y.S.—13

use and occupation of her property as she would have enjoyed if the nuisance had not been maintained. She also avers that the value of the use and occupation of the premises has been rendered far less than it otherwise would have been, and she claims damages for injuries to her health and the decline in rental value of the premises caused by the existence of the alleged nuisance. The defendant denies those allegations of the plaintiff which charge the effects of the operation of defendant's works as constituting a nuisance, and sets forth affirmatively its incorporation, and an obligation under a contract made with the state of New York pursuant to one of the conditions of its charter. It further alleges that it is engaged in furnishing large quantities of gas to customers in the city of New York, including the corporation of the city of New York, at largely reduced rates, as required by its contract with the state, and that it confers a great benefit to its customers and to the city of New York by reason thereof; and it further sets forth that in the construction of its works for the manufacture of gas, and in the storage of naphtha, and in the maintenance and operation of its plant, it exercised the greatest care and pains to prevent the escape of naphtha, or of any disagreeable fumes or vapor, into the surrounding atmosphere, and that the apparatus constructed and used by it for the storage of naphtha and the manufacture of gas renders it practically impossible for the naphtha, or any disagreeable fumes, to escape into the surrounding atmosphere, and is in the highest degree efficient, cleanly, and destitute of noisome or offensive odors, fumes, or vapors, and is of the best construction and manufacture known; that the plant is erected, and that the manufacture of gas is conducted, in the most careful, skillful, and scientific manner, and with scrupulous regard to the comfort, convenience, and safety of all the residents in the vicinity of the defendant's works. It denies that the business carried on by the defendant in the manufacture of gas or in the operation of its works is or was a nuisance, or is noxious, noisome, or offensive, or renders living in the neighborhood or in the plaintiff's premises uncomfortable or disagreeable or undesirable, either as a residence or as a place for carrying on business; and it denies that, by reason of any of the acts of the defendant in erecting the buildings or in carrying on its business, plaintiff's land and premises have been or are damaged in rental value, or that the value of the use and occupation of the premises has been rendered less to the plaintiff by any act or acts of the defendant.

The initial inquiry arises upon the evidence, and is: What are the results or consequences of the defendant's use of its property and plant? Do they only subject the plaintiff to such inconveniences and annoyances as flow from the lawful use by a person of his own property, or are they such as are unlawful in consequence of the unreasonable use by a person of his property, regard being had to time, place, and circumstances? The liability of the defendant is to be ascertained by the same rule that would apply in an action between private individuals. Generally speaking, "the test of the permissible use of one's own land is not whether the use or the act causes injury to a neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance; but the inquiry is,

was the act or use an unreasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to the interests affected, his own and those of his neighbors, and having in view, also, public policy?"    Booth v. Railroad Co., 140 N. Y. 277, 35 N. E. 592.    But the particular use of property may amount to a private nuisance; and, to quote again from the case cited, "whether a particular act or thing constitutes a nuisance may depend upon the circumstances and surroundings.    The use of premises for mechanical or other purposes, causing great noise, disturbing the peace and quiet of those living in the vicinity, and rendering life uncomfortable, or filling the air with noxious vapors, or causing vibration of the neighborhood dwellings, constitutes a nuisance, and such use is not justified by the right of property.    Fish v. Dodge, 4 Denio, 311; McKeon v. See, 51 N. Y. 300; Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537."    The pleadings in the case at bar raise very plainly the issue as to the existence of a private nuisance, and the verdict of the jury established the affirmative of that issue.    An examination of the whole evidence shows that the jury were justified in reaching that conclusion.    Apart from the circumstances of an alleged accident, which caused a special inconvenience, and which the jury were instructed to disregard if they believed it to be an accident, substantially all that was claimed by the plaintiff respecting the injurious character and results of the use of the processes and the incidents of manufacturing gas by the defendant was fully proven.

It thus appearing that the acts of the defendant were such as between private individuals would constitute a nuisance, and that injury to the plaintiff's person and property ensued therefrom, the next inquiry is whether there is anything in the status of the defendant, or the rights acquired by it, which exonerates it from liability for the consequences of its acts constituting a private nuisance.    That exemption is claimed by the defendant for the reason that it, as a chartered corporation, holds a franchise from the state of New York to manufacture gas; that it is, therefore, lawfully engaged in a business in the conduct of which those things complained of by the plaintiff are necessary incidents; and that it carries on all its processes of manufacture by methods productive of as little inconvenience as possible to those in the vicinity of its works, and that its apparatus and appliances are adapted to that end, and that it exercises the greatest care in that regard.    The exercise of care to prevent annoyance and discomfort, or to reduce to a minimum the injurious consequences incident to the manufacture of gas, cannot affect the question of liability, so long as that care is ineffectual, for there was no duty to construct or operate the gas works imposed by law on this private corporation organized for gain; nor does the mere fact that the defendant is engaged in the lawful manufacture of gas save it from liability for the injuries resulting to neighboring property owners from that manufacture, for the use of one's own land for the purposes of lawful trade may become, and as the jury have found in this case did become, a nuisance.    The rule in the state of New York upon this subject must be regarded as finally settled.    Where franchises are conferred upon a corporation, the terms of the statute giving the authority are not

necessarily imperative or permissive, and the mere fact of the delegation of the right to manufacture does not confer a license to commit a nuisance, although what is contemplated by the statute cannot be done without it. There is no variation of this rule as applied to different kinds of corporations, whether they be municipal or manufacturing or carrying, or of any other kind.

In Cogswell v. Railroad Co., supra, it is said:

"The statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury. This is but an application of the reasonable rule that statutes in derogation of private rights, or which may result in imposing burdens upon private property, must be strictly construed; for it cannot be presumed from a general grant of authority that the legislature intended to authorize acts to the injury of third persons, where no compensation is provided except upon condition of obtaining their consent. This construction of statutory powers applies with peculiar force to grants of corporate powers to private corporations, which are set up as a justification of corporate acts to the detriment of private property."

That was an action against a railroad company for the use of one of its engine houses in such a manner as to constitute a private nuisance.

In Morton v. City of New York, 140 N. Y. 207, 35 N. E. 490, the same rule was applied to a municipal corporation in maintaining a pumping station adjacent to the plaintiff's property, which pumping station was used for the supply and distribution of Croton water in the city of New York. In that case the court reiterated the declaration that there had been grafted an important limitation upon the principle that legal liability in damages cannot arise from acts done by a corporation in the performance of that which it had legislative authority to do, and which resulted in consequential injuries to another, and which, as between individuals, would be regarded as a nuisance. That limitation is "that the authority which will shelter an actual nuisance must be express, or a clear and unquestionable implication from powers conferred, certain and unambiguous, and such as to show that the legislature must have intended and contemplated the doing of the very act in question." That formulation of the limitation is almost identical with the language in which the same rule is announced in Hill v. City of New York, 139 N. Y. 501, 34 N. E. 1090. Its application to a corporation engaged in the manufacture of gas was made in Bohan v. Light Co., 122 N. Y. 18, 25 N. E. 246. In the prevailing opinion in that case, the leading authorities accessible up to the time of its decision are carefully examined, and the following propositions are sanctioned therein, viz.: That, where a lawful business is carried on by a person on his own premises in such a manner as to become a nuisance to adjacent property owners, a liability in damages exists, although the acts constituting the nuisance are inseparably connected with the business so carried on, and the damages resulting are a necessary consequence thereof, and, if those acts in themselves constitute a nuisance, negligence need not be proven to authorize a recovery; that every owner of land is bound to make a reasonable use of his property, having respect for his neighbors' rights; that a use which causes noxious smells and vapors resulting

in injury to the property or persons of those in the neighborhood is not reasonable, and is a nuisance per se; and that corporations authorized by statute to carry on business of a quasi public character are under the same obligations as a private party in this regard, and immunity cannot be claimed from statutory authority, unless that authority extends, by express delegation or by clear and unquestionable implication, to the very acts which occasioned the injury. Whatever may have been decided by courts in other jurisdictions it is unnecessary for us to consider. The adjudications made by the court of last resort in this state have definitely settled the law applicable to this case upon the principal point involved.

Turning, then, to the source of the defendant's rights and powers as contained in the statute under which it was incorporated, we find nothing therein expressly giving the right to do those things complained of by the plaintiff, nor do we find anything from which an implication may be drawn that the legislature contemplated conferring authority to commit such acts. It is stated in the record that chapter 248 of the Laws of 1886 is the charter of the Standard Gaslight Company. By that statute, the defendant was authorized and empowered to lay conductors and mains for conducting gas through and under the streets, avenues, squares, and public places of the city of New York, and, as a consideration therefor, the defendant was required to file in the office of the comptroller of the city of New York a stipulation or agreement that all gas supplied through such conductors and mains shall have an illuminating power of a certain degree, and that no greater price or charge for supplying gas should be made or received by the company than at the rate of $1.50 a thousand feet, and that for gas supplied to the public buildings or offices of the corporation of the city of New York the charge should not exceed $1.25 a thousand feet, and that supplied for the public lamps in the streets of New York should be furnished at a maximum rate not to exceed $12.50 per annum. There is nothing whatever in this statute which requires the defendant to manufacture gas in any particular way, at any particular place, or under any special conditions. Nothing whatever is said with regard to its plant or its processes of manufacture. It is claimed that, in consequence of the provisions relating to charges to be made for gas, an authority is to be implied that the defendant might manufacture it by any processes, from any substance, in the cheapest and most economical manner, and regardless of any consequences to third persons. There was nothing in this statute that compelled the defendant to do anything unless it chose to do it. The regulation of price gave no exemption from liability to the defendant. If it chose to accept a franchise and manufacture under it, it did so under the same conditions as any other manufacturing or trading corporation would operate under a franchise; that is to say, subject to all liabilities imposed upon it by law in connection with the conduct of its business.

We have seen that, upon the facts which must have been found by the jury, a case of a private nuisance was made out; but it is claimed by the defendant that in the instructions given by the judge there was a radical error, which broadened the liability of the defendant, and

placed it upon an altogether untenable ground. In his charge the judge said to the jury: "The plaintiff was entitled to enjoy her property as before the gas works were put up." And again: "The plaintiff, I repeat, was entitled to enjoy her property as before the gas works were put up." Those two sentences, separated from their context and considered without reference to the connection in which they were uttered, are made the subject of an exception, and it is suggested that from them the jury were entitled to consider that the plaintiff had the right to enjoy her property in the same way as if no buildings had been put up by the defendant at all, and therefore it could be inferred that even for the ordinary inconveniences which result to one owner of land from an adjoining owner's building upon his property an action might be maintained. Nothing of the sort was meant or intended by the judge, and the connection in which the sentences quoted were used shows clearly that their application was as to the existence of a nuisance, and not otherwise. In the very paragraph in which the first sentence occurs, the court told the jury that they must find, by a clear preponderance of evidence, that certain facts existed which would constitute a private nuisance, and, if they constituted such a nuisance, then the plaintiff would be entitled to recover such damage as appeared from the testimony to result proximately from the injury. They were told that a nuisance could not be justified, or its maintenance permitted, by showing that the injury occurred in the conduct of a lawful business carried on with skill and care; that legislative and municipal authority might protect the defendant from indictment, but did not afford protection where property rights of occupants were invaded. Then follows the sentence first referred to. When the remark was repeated, it was in direct connection with a statement that gas companies authorized by charter to erect their gas works, and carry them on for the purpose of manufacturing gas, are responsible for noxious smells, if they constitute a nuisance. And, further, when the attention of the judge was called by exception to the remarks criticised, he said: "That is stated in connection with the balance of the instructions. You must not pick out a particular line from what I have said, and forget the balance of the instructions." That was said to the jury; and they knew, as we can see from the whole structure of the charge, that the remark objected to was made in connection with the right to enjoy the property free from a nuisance. In the additional charge made, on the jury returning for further instructions, the court restated very clearly the rule of liability, and expressly charged, in the words of the defendant's counsel, that, "unless the plaintiff has satisfied the jury that the defendant wrongfully maintained such a nuisance, their verdict must be for the defendant." It is quite evident that the jury could not have been misled by the instructions which have been referred to.

The measure of damages as stated by the court was the correct one. The nuisance consisted in the manner of use of property. The effects of that nuisance were the impaired health of the plaintiff and the diminution in the rental value of her property. The jury were instructed to find separately the amount of damages for each species of injury. That awarded for the impairment of health was almost

insignificant. It was an element of damage. It was caused by the noxious fumes emitted, and by other annoyances, and was a direct result thereof. In Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, a recovery was sustained both for injury to the property and health of a plaintiff. The damages to property, temporary in their nature and continuing while the nuisance lasts, can only be measured by the diminution in rental value, or the difference between the rental value free from the effects of the nuisance and subject to it. The same rule applies whether the property is in the possession of a tenant or in the occupation of the owner. Francis v. Schoellkopf, 53 N. Y. 152. The reporter's syllabus of that case was criticised in Bohm v. Railroad Co., 129 N. Y. 596, 29 N. E. 802, but not as respects the point now under consideration. The case of Mortimer v. Railroad Co., 129 N. Y. 81, 29 N. E. 5, is a case where the property was in the possession of tenants. Weil v. Stewart, 19 Hun, 272, is a case where the property was in the possession of the plaintiff, who was held entitled to recover the difference in rental value. See, also, Tallman v. Railroad Co., 121 N. Y. 119, 23 N. E. 1134; Lawrence v. Railroad Co., 126 N. Y. 483, 27 N. E. 765; Woolsey v. Railroad Co., 134 N. Y. 326, 30 N. E. 387, and 31 N. E. 891. The general measure of damages applicable to a case of this kind is the actual diminution in rental value by reason of the defendant's acts; and we conceive it to be the same rule as was applied to the trespasses of elevated railways, where actions were brought and recoveries had for past damages.

Upon the trial of this action, the court was requested to require the jury to make specific answers to certain questions in the nature of special findings of fact, which request the court refused to comply with. It was a matter absolutely in the discretion of the trial judge, and, as that discretion was not improperly exercised, we are not disposed to interfere with the ruling of the court thereupon.

The judgment and order appealed from must be affirmed, with costs. All concur.