Virginia Stuart Mackay-Smith and Others, as Trustees under the Will of Ellen E. Ward, Deceased, for William Cairns Stuart, Appellants, *v.* Alexander Crawford and Others, Respondents.

*Nuisance — competency of evidence as to the uses made of other adjacent property — review of a decision made on conflicting evidence.*

In an action to enjoin the continuance of a nuisance alleged to arise from the storing of cheese on the defendants' property, the court, in determining whether the plaintiffs are entitled to an injunction, may take into consideration the fact that in the immediate locality there are several stables, a blacksmith shop and a vinegar factory, but it may not consider such fact in determining whether or not the use of the defendants' premises constitutes a nuisance.

An appellate court is not warranted in reversing the determination of a trial court on questions of fact, when the evidence is conflicting, merely upon the ground that in its opinion the trial court should have reached a different conclusion.

Hatch and Ingraham, JJ., dissented.

Appeal by the plaintiffs, Virginia Stuart Mackay-Smith and others, as trustees under the will of Ellen E. Ward, deceased, for William Cairns Stuart, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 26th day of June, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*Henry De Forest Baldwin,* for the appellants.

*William E. Cook,* for the respondents.

McLaughlin, J.:

The plaintiffs are the owners of a house situated at No. 413–415 West Seventeenth street, in the city of New York, and they instituted this action to enjoin the defendants (who are the owners of adjoining premises, No. 411 West Seventeenth street) from storing cheese thereon, which it was alleged constituted a nuisance. Upon the trial it appeared that the defendants were dealers in butter and cheese, and that they stored many hundred pounds of the same in their building. On the part of the plaintiffs, several witnesses gave testimony to the effect that the cheese thus stored gave off a disagreeable and offensive odor, which rendered to a certain extent the premises of the plaintiffs uninhabitable. This testimony was contradicted by several witnesss called on behalf of the defendants.

The learned justice before whom the trial was had reached the conclusion that the business conducted by the defendants upon their premises "is a lawful one, carried on in a lawful and proper manner, and in a proper place," and "that defendants do not maintain a nuisance on their said premises," and he thereupon dismissed the complaint upon the merits, with costs. Judgment was thereafter entered to this effect, from which the plaintiffs have appealed.

FIRST DEPARTMENT, DECEMBER TERM, 1900.        [Vol. 56.

Whether or not the use of the defendants' premises constituted a nuisance was a question of fact to be determined by the trial court, and it having found upon evidence sufficient to sustain the finding that such use did not constitute a nuisance, this court ought not to interfere. The rule is well settled that an appellate court, in reviewing the determination of a trial court on questions of fact, when the evidence is conflicting, is not warranted in reversing, merely upon the ground that in its opinion the trial court should have reached a different conclusion than it did; and that, in order to sustain a reversal on the facts, it must appear affirmatively that the decision of the trial court is against the weight of evidence, or that it can be said, with a reasonable degree of certainty, that the trial court erred in reaching the conclusion which it did. (*Foster* v. *Bookwalter*, 152 N. Y. 166; *Baird* v. *Mayor*, 96 id. 567.)

That the evidence here was conflicting needs only a brief reference to the record. On the part of the plaintiffs the witness Acker testified, in substance, that prior to the time the defendants commenced to occupy their premises, the atmosphere in the locality was good, but thereafter it was impregnated with an offensive smell of cheese; that it permeated the whole building standing on plaintiffs' premises, and that this odor was so strong at times that she was unable to occupy a portion of her apartment in this building; that it was substantially the same during all the time. Another witness, Ward, testified to substantially the same effect, and these witnesses were corroborated by four or five others.

On the part of the defendants, both Dr. Allen and the witness Joffe testified that they were inspectors of the health department, and in the discharge of their official duties had several times visited the premises of the defendants; that they found no objectionable odors about them. And one of the defendants testified to the effect that the premises were used not only for the storage of cheese, but also butter; that butter absorbs any foreign odors; that the butter had not been affected, and that there were no objectionable odors about their building. These witnesses were corroborated, in some respects, by other testimony, and especially to the effect that there were no obnoxious odors arising from the storing of cheese on defendants' premises.

It also appeared that there were in the immediate locality several

stables, a blacksmith shop and a vinegar factory, and while these facts could not be considered in determining whether or not the use of the defendants' premises constituted a nuisance, we are of the opinion that it was entirely proper for a court of equity to take them into consideration in determining whether or not the plaintiffs were entitled to the relief sought. We think, therefore, that as there was sufficient evidence to sustain the finding of the trial court that the defendants did not maintain a nuisance on the premises, the judgment appealed from must be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred; INGRAHAM and HATCH, JJ., dissented.

HATCH, J. (dissenting):

I am unable to concur in the views expressed by Mr. Justice McLAUGHLIN in his opinion in this case. As I understand, it is not contended but that the evidence given upon the part of the plaintiffs was abundantly sufficient to show that the business, as conducted by the defendants, constituted the same a nuisance. The fact that there was and had before existed in more or less contiguity to the premises owned by the plaintiffs, some stables, a blacksmith shop and a vinegar factory, does not militate against the fact that the business of the defendants as conducted was a nuisance. It appeared that these matters did not render the premises uninhabitable or destroy the character of the locality as a residential neighborhood. On the contrary, the evidence upon that subject showed that these businesses were so situated and so conducted as to be innocuous. They in no sense created a nuisance, nor did they interfere with the comfortable enjoyment of the plaintiffs' premises for the purpose of habitation. The invasion of the neighborhood by the defendants and the introduction of their cheese business therein did, however, work a wondrous change. And, as I view this case, the working such change and the means which accomplished it created a nuisance. This fact, I think, appears from the testimony of the defendants. It is undisputed that in addition to the American cheese which was stored by the defendants, they keep on hand from 500 to 5,000 pounds of limburger cheese, about 30,000 pounds of Swiss cheese, together with considerable quantities of Brie and Roquefort cheese. It does not need proof to show that a strong, pungent and penetrat-

ing odor issues from these compounds. The odor from limburger cheese when it is given fair opportunity to spread itself is overwhelming, and unless the olfactory sense be educated to its liking or deadened to its presence, it is about as offensive an odor as can greet the olfactory nerve of human beings. That premises are inhabitable in its continued exposed presence will not be generally believed, and when it is combined with the odoriferousness arising from the other cheese, we can readily see that a stench can be produced by the side of which the smell of hog pens and slaughter houses might be regarded as delicate perfumery. It is enough to say that language fails in description of such an odor, and it is evident that the witnesses for the plaintiffs were baffled in the attempt by lack of power to describe the overwhelming presence. It is testified by the defendants themselves that packages containing these compounds are broken open upon the premises, are handed to the men for delivery in wagons, and are by them delivered. This breaking occurs about seven or eight o'clock in the morning, and the wagons are returning from six to nine o'clock in the evening. It needs no occult power to understand that a small quantity of limburger cheese only is necessary to fill the atmosphere with smell. We have seen a single wagon containing a small quantity drive people from the street along which it passed, and we can readily understand that by constant use the wagons come to have a distinctive smell entirely their own.

It is evident, I think, that the method of doing business must have released these odors in offensive form. It is said that Dr. Allen and the witness Joffe testified that they were inspectors of the health department, and visited these premises in their official capacity and found no offensive odors about them. It would have been more satisfactory if Dr. Allen had told the court the time of day he was there, and whether the defendants were then engaged in handling limburger cheese. Upon this subject he is silent, and, taking his testimony as a whole, it amounts to no more than saying that he inspected the premises, that he found the smell of cheese, but discovered no objectionable odor. The only cheese he saw was American dairy cheese, and of this no complaint is made. His testimony would have been true and consistent had he found and smelled of limburger and then said that he found no objectionable

odor. It might not have been to him. The popular prejudice, however, seems to be otherwise. The other witness adds nothing to the strength of the testimony of Dr. Allen. As I view the evidence, the defendants overthrow the effect of this testimony when they describe what they keep and how the business is carried on. That such business constitutes a nuisance in a residential district I think is clearly established by such testimony. It is said that the business is lawful and carried on in a proper manner. This is not the question. A rendering factory is lawful and may be carried on in a proper manner and yet be a nuisance, even though no more odor emanates from it than such as is necessarily incidental to the business. The question is, is the place where it is established proper for the business. The present place is a residential neighborhood, and I think that the evidence fairly shows that this cheese business substantially destroys the neighborhood for that purpose. And even though it be conceded that the business is no more offensive than such as is incidental to its proper conduct, yet it is a nuisance as located, and as such it ought not to be permitted. (*Rosenheimer* v. *Standard Gas Light Co.*, 36 App. Div. 1; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Garvey* v. *Long Island R. R. Co.*, 159 id. 323.)

I am of opinion, therefore, that the court erred in dismissing the complaint upon the evidence in this case. If, however, I am wrong in this conclusion, it seems clear to me that fatal error was committed by the court in rejecting competent testimony bearing upon the issues presented It is the averment of the complaint that the act of the defendants caused a nauseating and penetrating stench, tainting and corrupting the atmosphere so as to render the apartments in plaintiffs' building unfit for habitation and greatly depreciating them in value. In support of this averment the plaintiffs called the janitor of the building, who had authority to show and rent the flats, and asked if any tenants had left since the coming of the defendants' business into the neighborhood. This was objected to by the counsel for the defendants upon the ground that it was incompetent and immaterial, and that the defendants must be connected with it. The court so held and ruled that such connection would have to be made by producing the tenants themselves, to which ruling the plaintiffs excepted. The plaintiffs then asked if the tenants when

they left stated as their reason that they did so on account of the smell of cheese. This was objected to by the defendants as incompetent. The objection was sustained and the plaintiffs excepted. This was followed by the question, "Did the tenants who left complain of the smell of cheese?" and was also excluded and the plaintiffs excepted. These rulings, I think, constituted error. It was competent to show that tenants left this building after the defendants had established their business in the neighborhood. Such testimony bore directly upon the issue presented by the complaint, that the defendants' acts had rendered the same uninhabitable. It has been held competent in actions of this character to show that tenants have refused to remain in apartments affected thereby, unless the rent was reduced, and also to show, as a part of the transaction, that the tenants stated the reason which induced their action, and that the reason was admissible as part of the *res gestæ*. (*Hine* v. *N. Y. El. R. R. Co.*, 149 N. Y. 154.)

There can be no difference in principle between showing that a tenant applied for and obtained a reduction in rent on account of the nuisance, and to show that he vacated the premises entirely. In both cases the character of the proof is the same, and bears upon the issue involved in like manner. It is evident that the learned court below did not hold that evidence that tenants left plaintiffs' premises was incompetent. On the contrary, his ruling clearly indicates that he regarded such testimony as proper, but that he held that it must be proved by the tenants themselves, and that the means proposed by which it was to be established was improper. If tenants left, that was a fact of which testimony could be given by any person having knowledge of it. It was one of the steps by which plaintiffs established their cause of action. The other step in the process was the cause which induced them to leave. If that cause was produced by the act of the defendants, then it bore directly upon the issue and tended to support plaintiffs' claim. The *res gestæ* was the character of the defendants' business, and the effect which it produced. This embraced two features — one, the act itself, as constituting the nuisance and its effect showing it to be actionable; and the other the damage sustained.

The testimony which the question sought to elicit bore directly upon both these issues as both constituted the *res gestæ*. Under such cir-

cumstances, it was not only competent to show the fact, but it was also competent to show the declaration of the tenant respecting the fact made at the time as it was a part of one and the same transaction. (*Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 N. Y. 274; *Hine* v. *N. Y. El. R. R. Co.*, *supra*.)

Such declarations are not condemned as hearsay, but are admissible as evidence of the principal fact, the rule being that " ' when the act of a party may be given in evidence his declarations made at the time and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence.' " (*Waldele* v. *N. Y. C. & H. R. R. R. Co.*, *supra*.) That is precisely this case. The form of the questions in the present case is somewhat objectionable on account of their leading character, but the form was undoubtedly provoked by the statement of the court that the testimony could only be proper when elicited from the tenants themselves. No objection was interposed on account of the leading character of the questions, and it is quite clear that such objection was not intended or considered.

For these reasons, I think, the judgment should be reversed and a new trial granted, with costs to appellants to abide event.

Ingraham, J., concurred.

Judgment affirmed, with costs.