(94 Misc. Rep. 471)

### DARR v. COHEN.

(Supreme Court, Special Term, New York County. April 13, 1916.)

1. LANDLORD AND TENANT ⬅142(8)—NUISANCE—OPERATION OF RESTAURANT DUMB-WAITER.

Where the manager of a restaurant in an apartment house operated a dumb-waiter therein with unreasonable noise and violence, orders for food also being shouted through it, to the annoyance of the lessee of an adjoining apartment, he committed a nuisance subject to restraint by the lessee, since no one may make an unreasonable use of his own premises to the material injury of his neighbor, who need not be driven from his dwelling, provided his enjoyment of life and property is materially lessened.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. ⬅ 142(8).]

2. LANDLORD AND TENANT ⬅142(8)—NUISANCE—ABATEMENT BY TENANT.

A tenant, in possession of premises affected by a nuisance, under a lease made during the existence of the nuisance, can maintain an action to abate the nuisance and recover damages sustained thereby.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. ⬅ 142(8).]

3. NUISANCE ⬅27—ABATEMENT—ENJOINING EMPLOYÉ.

The manager of a restaurant, who previously had an interest therein, and aided and abetted the maintenance of a nuisance by the operation of a dumb-waiter with unnecessary noise and violence, etc., could be enjoined from maintaining the nuisance, though he was a mere employé.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. ⬅27.]

4. LANDLORD AND TENANT ⬅142(7)—PUNITIVE DAMAGES.

Where the manager of a restaurant in an apartment house manifested a reckless disregard of the rights of a tenant by operating a dumb-waiter with unnecessary noise and violence, he was liable for punitive damages.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 515; Dec. Dig. ⬅142(7).]

Action by Earl A. Darr against Alexander Cohen. Decree for plaintiff.

Phillips & Avery, of New York City (Earl A. Darr, of New York City, of counsel), for plaintiff.

Charles Liebling, of New York City, for defendant.

GIEGERICH, J. [1] The action is to abate a private nuisance. The plaintiff, since October 1, 1910, has been the lessee and occupant of an apartment on the ground floor of the seven-story brick and stone apartment house known as the "Wilmington," situate at the southeast corner of Broadway and Ninety-Seventh street, in the borough of Manhattan, New York City. The evidence shows that the Wilmington is a high-class apartment house, with separate bathrooms, kitchen, and

rooms for each apartment, which are separate from each other, and that it is situated in a residential neighborhood composed of high-class apartments in the built-up portion of Manhattan Island. The plaintiff's present lease for said apartment was made in September, 1915, and expires on September 30, 1916, and the plaintiff is paying the same rent as he paid before the nuisance complained of was created. The ground floor and a part of the basement of that portion of the apartment house in question fronting on Broadway is used for business purposes, and, among other things, for a restaurant. The complaint alleges, and the answer does not deny, that the restaurant is now operated by the defendant, and has been operated by him and his predecessors since March, 1915, when it was installed. The restaurant adjoins plaintiff's apartment, now consisting of two rooms and a bath; the bedroom thereof being immediately adjacent to the walls separating it from the restaurant. Such walls are an ordinary lath and plaster studded wall about six inches in thickness and a fireproof block partition wall about five inches in thickness, which fireproof wall was erected wholly within plaintiff's apartment in November, 1915, when it was changed from a three-room to a two-room apartment, by throwing the two rooms next to said wall into one large room. About March, 1915, a dumb-waiter and appurtenances and attachments were installed and erected immediately adjacent to and run up and down against said walls which separate plaintiff's bedroom from the restaurant, and are operated at frequent intervals during the whole of each day and night. The plaintiff seeks to enjoin the operation of such dumb-waiter and the shouting of orders for food up and down the dumb-waiter shaft.

Although the allegations of the complaint with respect to these matters are denied, the evidence satisfies me that the dumb-waiter is of improper construction. There is great play between the car of the dumb-waiter and the guides on which it runs, with the result that the running of the car is accompanied by a loud noise. The rope which operates the car of the dumb-waiter runs in a wheel with a very shallow groove, so that the rope is liable to and does at times slip off, causing the car to be operated with a loud noise. The car has no shock absorbers at the top, so that when it strikes the top of the shaft or wheel there is a loud report. The easterly wall of the dumb-waiter shaft is not fireproofed, as required by section 97 of the city ordinances, in consequence of which the walls between the restaurant and plaintiff's apartment are thinner than they would be if fireproofed, and the ropes of the dumb-waiter strike such walls at frequent intervals with a loud report. The evidence further establishes that the dumb-waiter is often negligently operated, by running it faster than necessary, and by letting it go down with a sudden fall, and that the defendant and his representatives often place large quantities of dishes on the dumb-waiter and then allow it to go down with a sudden fall, all of which results in loud noise, and that the defendant and his representatives at frequent intervals during each and every day and night call and shout orders for food up and down the elevator shaft. I also find that the operation of the dumb-waiter and the noise and shouting above mentioned are distinctly heard in plaintiff's apartment at frequent inter-

vals during all hours of each night, with the result that plaintiff is substantially deprived of rest and sleep while in his apartment and suffers great annoyance by reason thereof; that the noise is of such a character as to materially interfere with and impair the ordinary comfort of existence on the part of an ordinary person, the plaintiff's apartment being thereby rendered unfit and useless for the purposes for which it was and is leased by him, viz., "a strictly private dwelling apartment." I further find that the defendant's predecessor in the restaurant and the landlord of the said apartment often promised to abate the nuisance, both before and after the making of the last lease of the plaintiff's apartment; that before the alteration of the plaintiff's apartment in November, 1915, it was possible for the plaintiff, by leaving one room of his apartment unoccupied, to shut out a part of the noise arising from the operation of the restaurant; that on several occasions before the bringing of this action the plaintiff, orally and in writing, requested the defendant to abate the nuisance, and that on one occasion when the plaintiff requested the defendant to cease the operation of the dumb-waiter, the latter replied, in substance, that "I am much obliged to you for telling me how to run my business; maybe, you do not know it all; you can't make me stop running that dumb-waiter."

There are many cases in the books where the unreasonable use of premises to the material injury of others has been enjoined. The questions presented by this case are therefore not novel and their disposition is governed by the well-established rule that no one may make an unreasonable use of his own premises to the material injury of his neighbor's premises, and, if he does, the latter has a right of action even if he is not driven from his dwelling, provided the enjoyment of life and property is materially lessened. Bohan v. Port Jervis Gas Light Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711; Pach v. Geoffroy, 67 Hun, 401, 22 N. Y. Supp. 275; affirmed on opinion below 143 N. Y. 661, 39 N. E. 21; McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840, and cases there cited. In Bohan v. Port Jervis Gas Light Co., supra, it is said in the prevailing opinion, at pages 23, 24 and 25 of 122 N. Y., page 247 of 25 N. E. (9 L. R. A. 711):

"If one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages, and it is not necessary to a right of action that the owner should be driven from his dwelling; it is enough that the enjoyment of life and property be rendered uncomfortable. * * * While every person has exclusive dominion over his own property and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neighbor's rights. The maxim 'sic utere tuo ut alienum non lædas' limits his powers. He must make a reasonable use of his property. * * * The wants of mankind demand that property be put to many and various uses and employments, and one may have, upon his property, any kind of lawful business, and so long as it is not a nuisance, and is not managed so as to become such, he is not responsible for any damage that his neighbor accidentally and unavoidably sustains."

In Pach v. Geoffroy, supra, the court, speaking by O'Brien, J., said (page 405 of 67 Hun, page 277 of 22 N. Y. Supp.):

"If the evidence justified the findings that the operation of the dynamo and machinery in the place and manner as now attached caused vibrations and

jarrings and noises which were continuous, to the inconvenience of the plaintiffs and their patrons, and to the interference and damage of the plaintiffs in the operation of their business; and if, in addition, it were shown that these acts were unreasonable and unnecessary, they were sufficient to justify his (the referee's) conclusion that they constituted a nuisance."

The evidence convinces me that the defendant and his representatives in the operation of the dumb-waiter and the uses to which the dumb-waiter shaft has been put, have acted in excess of what is usual and necessary for the purpose of conducting or operating a restaurant of the character disclosed by the record; that under all the circumstances his and their use of the premises where it is conducted or operated is unreasonable, and that the acts complained of constitute a nuisance. While noise may be one of the necessary accompaniments of life in a crowded city, noises of the kind above mentioned should not be permitted in a dwelling house, especially where, as above shown, they are unusual and unnecessary for the purposes of the business referred to, and which the evidence shows were made in utter disregard of the comfort and rest of the occupants of the apartment house in question. It was held in Peck v. Newburgh Light, Heat & Power Co., 132 App. Div. 82, 116 N. Y. Supp. 433, that, in order to constitute noise a nuisance it must be such as to materially interfere with and impair the ordinary comfort of existence of ordinary people.

The facts in this case, as found by me and above set forth, fully stand this test. The noises in question are greater than an ordinary human being residing in a dwelling house can reasonably be expected to endure. They are unwarrantable and unreasonable, and, as already stated, they are such as to materially interfere with and impair the comfort of existence of an ordinary person. It should be borne in mind that it is not sought to restrain the conduct or operation of the restaurant, but only to prevent the use and operation of an improperly constructed and noise-producing dumb-waiter and its attachments, and the making of the unusual noises above described. No hardship can result from such inhibition, as the evidence shows that the dumb-waiter can be removed from the walls separating plaintiff's apartment and the restaurant to another location in the restaurant at a cost of about $200, and that such walls can be deadened by the use of a substance known as mineral wool at small cost. A sense of propriety and consideration for the comfort and rest of the occupants of the apartment house ought to impel the defendant and his representatives to refrain from shouting up and down the dumb-waiter shaft. Some other method of giving orders for food than that disclosed by the evidence can be employed. These considerations bring the present case well within the rule laid down in Pach v. Geoffroy, supra, where the court, at page 408 of 67 Hun, page 279 of 22 N. Y. Supp., used the following language, which is singularly pertinent to this case, viz.:

"While, therefore, the courts are always loath to interfere with the manner of conducting a lawful business, yet, when it can be shown that the manner of conducting it results in injury, to another, and that such injury could be prevented by changing the mode or manner of conducting such business, the court will be disposed to require that the cause of such injury be removed. If the defendant conducts his business in such manner as to do no injury to plaintiffs, the judgment does not hinder him from carrying on his trade of manu-

facturing jewelry upon the premises hired by him. If, on the other hand, he will persist, by the situation of the dynamo and machinery, in inf'icting injury and annoyance upon the plaintiffs, their customers and their business, the decree to prevent such unlawful interference with the enjoyment of plaintiff's premises should be enforced."

[2] The defendant urges that as the plaintiff renewed the lease of his apartment during the existence of the nuisance he is precluded from complaining of the continuance thereof. It is well settled, however, that a tenant in possession of premises affected by a nuisance, under a lease made during the existence of the nuisance, can nevertheless maintain an action to abate the nuisance and to recover damages which may be sustained by reason thereof. Bly v. Edison Electric Illuminating Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500, and citations; Hoffman v. Edison El. Illuminating Co., 87 App. Div. 371, 84 N. Y. Supp. 437.

[3] The defendant insists that the complaint should be dismissed because he is not the owner or occupant of the premises, but is merely an employé. As heretofore stated, the complaint alleges that he is the "operator" of the restaurant, and this is not denied by the answer. The defendant testifies that he is the manager of the restaurant; but, whatever may be the proper word to best describe his relation to the business, the evidence shows that until quite recently he had an interest therein, and that he aided and abetted in the maintenance of the nuisance. Under these circumstances he may be enjoined. Olmsted v. Rich, 6 N. Y. Supp. 826, 830.[1] My conclusion is that the plaintiff is entitled to judgment restraining the defendant and those under his direction from operating the dumb-waiter and its appurtenances and attachments, and from shouting up and down the dumb-waiter shaft, and awarding 6 cents nominal damages and $50 as punitive damages, with costs.

[4] Punitive damages are awarded by reason of the defendant's reckless disregard of the plaintiff's rights. Berlin v. Thompson, 61 Mo. App. 234; Yazoo & Mississippi Valley R. v. Sanders, 87 Miss. 607, 40 South. 163, 3 L. R. A. (N. S.) 1119; Wood, Nuisance, 3d Ed. § 868. See also note to Yazoo & Mississippi Valley R. v. Sanders, supra, where the authorities are collated.

The decree may contain a provision that the defendant have seven days after service of a copy thereof, with notice of entry, to comply with the terms of such decree, and that, if he shall unreasonably refuse and neglect to comply therewith, application may be made upon notice for an injunction restraining the operation of the restaurant by the defendant and those under his direction. The requests for findings of the respective parties have been passed upon as indicated on the margins thereof.

Submit for my signature upon two days' notice of presentation a decision embodying all findings made by me, with proof of service on the other side.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 53 Hun, 638.