GENEROSO DE MURO and Another, Plaintiffs, *v.* OLDRICH HAVRANEK and Others, Defendants.

Supreme Court, Westchester County, July 30, 1934.

*David Gorfinkel*, for the plaintiffs.

*Walter B. J. Mitchell*, for the defendants.

TAYLOR, GEORGE H., JR., J. This action in equity (*Adams v. Popham*, 76 N. Y. 410; *Leonard v. Spencer*, 108 id. 338; *Bohan v. Port Jervis Gas-Light Co.*, 122 id. 18) is brought by the plaintiffs, who own a small frame and stucco apartment house on the north side of Fegan street in Yonkers, against the defendants, owning the property immediately adjoining on the east, upon which latter the defendants operate a business or factory for the processing of meats and kindred purposes. Defendants use machinery and cooking and smoking appliances. Plaintiffs seek damages for an alleged nuisance which involves noise, odors, soot and grease, up to the time of the entry of the decree, and a permanent injunction restraining the continuance of the alleged nuisance. The defendants conduct their said business in a manner countenanced by the State and Federal laws and by municipal ordinances and regulations. Plaintiffs' apartment house contains six apartments. It has been owned by them since 1922. The defendants' adjoining property extends north from Fegan street to Ashburton avenue. It was acquired by the defendants in 1920. It was used then, and until 1931, by the defendants for similar, although much more restricted, business purposes. In 1920 the Fegan street portion thereof was occupied by a garage fronting on Fegan street, with a yard in the rear thereof extending to the southerly wall of the Ashburton avenue building. This garage and yard adjoined the plaintiffs' property and existed in practically the same condition from April, 1922, to July, 1931. The defendants' property (29 Fegan street) has a frontage on that street of thirty-four feet plus. It extends to Ashburton avenue, a distance of about one hundred and seventy-one feet. The Ashburton avenue frontage is twenty-five feet. During the period indicated, the defendants manu-

factured sausages and processed meats on a lesser scale, in the Ashburton avenue building, a location somewhat removed from the plaintiffs' premises. No nuisance is claimed to have existed before July, 1931. All defendants' machinery until then was in the Ashburton avenue property building, although defendants' then smokehouse was located near Fegan street. The operation of the plant then created no nuisance to the plaintiffs or plaintiffs' tenants. In July, 1931, the defendants expanded their said business. They engaged in interstate commerce. They altered the Fegan street portion. They eliminated the yard area. They built a solid brick wall along the westerly side of what had been the yard. They eliminated the rear wall on the ground floor of the two-story garage and reconstructed their premises otherwise, so that they obtained and still have manufacturing and other space on the ground floor of their premises from Fegan street to Ashburton avenue, a distance of about one hundred and seventy-one feet. To meet the increase of business several additional smoke chambers and two additional boiling pots were installed in the Fegan street portion of the premises. Machinery theretofore in the Ashburton avenue building was removed into the ground floor of what had been the (Fegan street) garage building and near to its westerly wall. The new wall at the westerly side of what had been the yard closed a window on the first floor of plaintiffs' apartment house. The defendants had a legal right to do this. Smokestacks were erected on the roof of the defendants' new one-story extension (previously the yard area). One stack was within a few feet of the easterly portion of the rear porch of plaintiffs' house. Another larger chimney was located about four feet east of that porch; a flue was erected about eight or ten feet therefrom, and seven skylights were constructed in the roof of the extension, two quite close to the plaintiffs' easterly wall and five within ten feet of it. The smoke flues were carried some distance above the roof of plaintiffs' house. Following that expansion and rearrangement of the plant, the defendants did a very substantial business. Their daily production of goods became and has remained large. The production has run as high as 4,000 pounds a day. The operation of the expanded plant from July, 1931, until the present time has been characterized practically daily (Sundays and holidays excepted) by smoke from the smoking of meats and by soot and black grease which enters plaintiffs' property, settles upon it, and even enters the apartments from the rear (north) when the windows are open. Meaty odors likewise have been disseminated to the discomfort of those occupying plaintiffs' premises. The defendants' establishment during said period also has emitted grinding noises incidental to the

operation of machinery, which machinery has caused vibration noticeable in an annoying degree in plaintiffs' premises. There is no proof, however, of structural damage to plaintiffs' premises. These features of defendants' said operation have caused discomfort to plaintiffs and their tenants, persons of ordinary sensibilities. Wash hung on lines in the rear of plaintiffs' premises has been damaged by smoke, soot and grease, producing like discomfort and annoyance. Upon all the relevant facts above recited or inferable otherwise from the evidence, I find that to the detriment, damage and injury of the plaintiffs in their said property and estate, the defendants have conducted and maintained a nuisance as described, for the maintenance of which they are liable in lawful compensatory damages to the plaintiffs, and the continuance of which, in its features thus constituting a nuisance, must be enjoined and restrained, subject as hereinafter indicated. The defendants in effect have trespassed in the manner indicated upon plaintiffs' property and rights. (*Booth* v. *Rome, W. & O. T. R. Co.*, 140 N. Y. 267, 276.) Such nuisance attributable to the defendants existed, and exists not because their use of their property is unpleasant, unsightly or to some extent annoying to the plaintiffs and their tenants, defendants' neighbors, but because such use with the incidents stated has interfered and " interferes materially with the physical comfort of persons in their own homes " (plaintiffs and their tenants) and " also causes some financial injury " to the plaintiffs (*McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40, 50); and because the features of defendants' operation detailed are " such as materially to interfere with and impair the ordinary comfort of existence on the part of ordinary people " (*Peck* v. *Newburgh Light, Heat & Power Co.*, 132 App. Div. 82, 85, quoted from Joyce on Nuisances, § 182; and read also, upon the general subject, *People* v. *Rubenfeld*, 254 N. Y. 245, 248; *Dillon* v. *Cortland Baking Co.*, 224 App. Div. 303; *Miranda* v. *Buffalo General Electric Co.*, 140 Misc. 267; *Andrews* v. *Perry*, 127 id. 320; *Stoneburner* v. *O-Gas-Co. Sales Corporation*, 135 id. 216). Defendants' said use of their premises has been unreasonable to plaintiffs' material injury. (*Darr* v. *Cohen*, 94 Misc. 471.) Even if the plant has been conducted without negligence on defendants' part — and in the main this is true except only as to the smoke, soot and grease, as to which there is evidence of negligence in operation — they are still liable under the facts found. (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340.) Nor does the circumstance that the defendants are conducting their business in strict conformity with law and with modern appliances relieve them of liability to the plaintiffs, whose property they have thus invaded. (See *People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711;

*Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18, 27; *Rosenheimer* v. *Standard Gas Light Co.*, 36 App. Div. 1, 8.) Plaintiffs are entitled to recover damages representing the diminution of the rental value of their premises (*Francis* v. *Schoellkopf*, 53 N. Y. 152) from July, 1931, to the date of the decree (*Thomann* v. *City of Rochester*, 256 N. Y. 165, 171) to be entered herein, this being an equity case (See as to rule in a law case, *Dietzel* v. *City of New York*, 218 N. Y. 270), and if the trespass should continue they would be entitled to recover in another action further damages measured in like manner. They are not entitled, however, to recover fee damages *as such*, for the nuisance is manifestly capable of abatement. (*Dietzel* v. *City of New York*, *supra*.) Plaintiffs are entitled to a permanent injunction restraining the continuance of the nuisance, unless the defendants shall pay to the plaintiffs an amount representative of their damages which will be caused by a continuance of the nuisance. (*Corcoran* v. *New York Central R. R.*, 100 Misc. 192; *Robb* v. *Rubel Bros.*, 107 id. 33.) The contentions learnedly urged by defendants' counsel have not been overlooked. His suggestion that plaintiffs moved into a business neighborhood (1922) where defendants' business was then being conducted (*Peck* v. *Newburgh Light, Heat & Power Co.*, *supra*) is not impressive. The defendants' then operation did not constitute a nuisance. That feature was incident to the expansion of the business in July, 1931, and to its operation thereafter. Counsel suggests also that in this neighborhood persons " must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life." (*Campbell* v. *Seaman*, 63 N. Y. 568, 577.) This is true. (Id.) They are not compelled to submit, however, without compensation, to conditions attributable to the defendants amounting to nuisance. (Relevant cases, *supra*.) I agree also with defendants' counsel that the defendants are " not compelled to remain stationary solely on account of adjoining buildings, provided the boundary of reasonable use is not overstepped." (*Bowden* v. *Edison Electric Illuminating Co.*, 29 Misc. 171, 173.) Here that boundary *has been overstepped by* defendants. That the general character of this neighborhood must be taken into consideration in determining, not whether the defendants' use constitutes a nuisance, but whether equity will interfere, is manifest. (*Mackay-Smith* v. *Crawford*, 56 App. Div. 136.) I have so considered it; the Fegan street neighborhood is, indeed, not a fashionable one. It contains in the main two- and three-family residences of a modest sort, and some business buildings, but no factories except that of defendants. The residents there, however, are not compelled to submit to a nuisance merely because of the indicated character of the neighborhood, in

which people in moderate circumstances, perhaps, but with rights which are entitled to respect live. The defendants urge the efficient and up-to-date manner in which the plant is conducted under governmental supervision and approval. From my inspection and the evidence otherwise I agree with them in this respect. The conditions amounting to nuisance attributable to them as found have no relation to the defendants' method of processing meats, nor is there implied in my findings any reflection upon the defendants' method of preparing their food products. Their plant is efficient and sanitary. Nevertheless, liability in some degree to the plaintiffs exists because of the other facts found, as above.

For damages for rental diminution between July, 1931, and this date, plaintiffs claim $1,287. In my opinion, this is excessive. Much of the diminution of rental value is attributable to general adverse economic conditions and to other causes not attributable to the defendants' found acts. In addition, the plaintiffs' property is an unheated apartment house with cold water and electric light as the only improvements (except sewer). Owing to conditions related to the more highly improved apartment houses, those in the category of plaintiffs' house have suffered. The defendants' suggestion that their acts and omissions caused proximately no such diminution is not impressive; in part, it was caused by the nuisance. I assess the plaintiffs' damages in this phase at the sum of $700. Plaintiffs are also entitled to an injunction restraining the further operation of the defendants' plant in such a manner as to result in continuing injury to plaintiffs' property, unless said defendants shall pay to the plaintiffs further damages in the sum of $1,200, which I assess as the amount which represents just compensation for such injury. The defendants may avoid the effects of a permanent injunction by paying said sum. I reject the defendants' contention that there is no damage in this phase. The amount suggested by the plaintiffs, $2,700, is excessive.

Judgment is directed in favor of the plaintiffs against the defendants as directed, with costs. Settle decision and judgment on notice. The defendants may submit requests to find upon which I will pass. Thirty days' stay to the defendants, and sixty days to make and serve a case. I will retain all papers pending the signing of decision and judgment.